Stanley A. HAMILTON, Edward
A. Contreras, and Elbert R.
Powell, Appellants,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

Nos. 90–470, 91–990, 91–998.

United States Court of Veterans Appeals.

Decided April 15, 1993.

As Amended May 12 and May 20, 1993.

Gershon M. Ratner, Washington, DC, was on the pleadings, for appellant Hamilton.

Alvin D. Wax, Louisville, KY, was on the pleadings, for appellant Powell.

Edward A. Contreras, pro se.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

In an October 7, 1992, order, the Court consolidated these three cases for en banc resolution of issues pertaining to the Court's jurisdiction. The Court ordered the parties to file supplemental memoranda addressing the preliminary jurisdictional issues, and the parties complied.

The question presented is whether, in light of the decision of the United States Court of Appeals for the Federal Circuit in *Strott v. Derwinski*, 964 F.2d 1124 (Fed. Cir.1992), and that Court's action in *Whitt v. Derwinski*, 979 F.2d 215 (Fed.Cir.1992) (single-judge order), this Court has jurisdiction over the merits of the instant cases on the basis of a document, purported to be a Notice of Disagreement (NOD), filed subsequent to the original NOD filed in each case. Consideration of this question has prompted the Court en banc to reconsider the basis for its decision in one of its earliest cases, *Whitt v. Derwinski*, 1 Vet.App. 40 (1990), which held that a subsequent NOD could bestow jurisdiction on this Court under section 402 of the Veteran's Judicial Review Act (VJRA), Pub.L. No. 100–687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.A. § 7251 Note (West 1991)) [hereinafter "VJRA § 402"], as long as that subsequent NOD was filed "in response to 'an adjudicative determination' made by the regional [Department of Veterans Affairs (formerly Veterans' Administration) (VA) ] activity." *Whitt*, 1 Vet.App. at 42. Whether or not this Court's holding in *Whitt* was correct when made is not

decided today; those joining in the Court's opinion include some who believe *Whitt* was not correctly decided, *see Whitt v. Derwinski*, 1 Vet.App. 94, 95 (1990) (order denying en banc review; Steinberg, J., dissenting), and some who believe it was correct as of the state of the law then existing. Rather, the Court has decided that its *Whitt* holding is no longer viable in the aftermath of the Federal Circuit's actions in *Strott, supra,* and *Whitt, supra.*

In reaching the decision to abandon our *Whitt* multiple-NOD holding, the Court is not suggesting that the Federal Circuit's *Strott* decision or *Whitt* action compels such a result. The Circuit has left unresolved how much of *Whitt* remains viable. Recognition of this vacuum has impelled the Court to reexamine the multiple-NOD concept in light of the substantial part of it that the Federal Circuit has clearly invalidated in *Strott* and *Whitt,* and to conclude that the better result under those circumstances is to abandon that concept altogether in favor of achieving the most rational construction of the statute consistent with the Federal Circuit's actions invalidating subsequent putative NODs in *Strott* and *Whitt.*

For the reasons stated in the ensuing opinion, the Court will overrule its multiple-NOD holding in *Whitt, supra.* The August 18, 1992, motion of the Secretary of Veterans Affairs (Secretary) to vacate the Court's August 4, 1992, opinion and to dismiss the appeal in *Hamilton v. Brown,* No. 90–470, for lack of jurisdiction will be granted. The Secretary's July 1, 1992, motion for dismissal of the appeal in *Contreras v. Brown,* No. 91–990, for lack of jurisdiction will be granted in part (as to one claim) and denied in part (as to two claims). Although the Secretary has not filed a motion for dismissal in *Powell v. Brown,* No. 91–998, the Court, having raised sua sponte the issue of whether it has jurisdiction over that appeal, will dismiss it in part for lack of jurisdiction.

### I. GENERAL ANALYSIS

The VJRA gave this Court jurisdiction only over "any case in which [an NOD] is filed *under section 4005* [now 38 U.S.C.A. § 7105] ... on or after ... [November 18, 1988]." VJRA, § 402 (emphasis added). The referenced section 7105 provides that "[a]ppellate review will be initiated by [an NOD]" and that if an NOD is not filed within "one year from the date of mailing of notice of the result of initial review and determination" made by the "agency of original jurisdiction" [hereinafter "AOJ"], the AOJ action or determination "shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title." 38 U.S.C.A. § 7105(a), (b)(1), (c) (West 1991); *see also* 38 C.F.R. § 20.302(a) (1992); *Strott v. Derwinski,* 1 Vet.App. 114, 116 (1991), *aff'd,* 964 F.2d 1124 (Fed.Cir.1992). An NOD is defined by VA regulations as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [AOJ] and a desire to contest the result". 38 C.F.R. § 20.201 (1992). VA regulations define an AOJ as the VA "regional office, medical center, clinic, cemetery, or other [VA] facility which made the initial determination on a claim or ... its successor". 38 C.F.R. § 20.3(a) (1992); *see also Malgapo v. Derwinski,* 1 Vet.App. 397, 398–99 (1991) (AOJ includes, in appropriate cases, a VA central office component). Regulations to substantially the same effect were in existence when the VJRA was enacted on November 18, 1988. *See* 38 C.F.R. § 19.118 (1987).

Section 402 of the VJRA establishes an absolute jurisdictional prerequisite to this Court's exercise of its jurisdiction under 38 U.S.C.A. §§ 7252, 7261, 7266 (West 1991). *See Prenzler v. Derwinski,* 928 F.2d 392, 393 (Fed.Cir.1991). Absent a post-November 17, 1988, NOD, the Court has no discretion to hear an appeal. *See Skinner v. Derwinski,* 1 Vet.App. 2, 3 (1990) (courts may not extend their jurisdiction where none exists (citing *Christianson v. Colt Indus. Operating Co.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988))). As the Federal Circuit stated:

Congress set this cutoff date to allow the new court to begin functioning with a manageable number of cases. *See, e.g.,* 134 Cong.Rec. S16650 (daily ed. Oct. 18,

1988) (statement of Sen. Cranston). Congress enacted this limitation to protect the new court from a flood of stale Board appeals. The appellant bears the burden to show that it filed an NOD on or after November 18, 1988.

*Prenzler*, 928 F.2d at 394. Both the Federal Circuit and this Court have sustained the constitutionality of VJRA § 402. *Belarmino v. Derwinski*, 931 F.2d 1543 (Fed.Cir. 1991); *Strott*, 1 Vet.App. at 116–17.

### A. This Court's Whitt Decision

In *Whitt v. Derwinski*, this Court rejected the argument of the Secretary that the only valid NOD is the first NOD filed in response to the first AOJ adjudicative determination. *Whitt*, 1 Vet.App. at 42–43, *vacated*, 979 F.2d 215 (Fed.Cir.1992) (single-judge order), *appeal dismissed*, 3 Vet. App. 258 (1992) (single-judge order). The Court held that "there can be more than one NOD filed under certain circumstances with respect to the same claim", and that "any NOD which meets the [VA regulatory] requirements of [38 C.F.R. § 19.118 (1991) (replaced by 38 C.F.R. § 20.201 (1992))] is valid for purposes of conferring jurisdiction" on this Court. *Ibid.* The Court based its decision in part on the use in the regulation of the phrase "expressing disagreement with *an* adjudicative determination of the [AOJ]" (emphasis added), which it viewed as providing that *any* adjudicative determination of the AOJ, rather than only the initial determination, may give rise to an NOD, which, in turn, would be valid for purposes of establishing this Court's jurisdiction. *Whitt*, 1 Vet.App. at 42.

### B. The Federal Circuit's Strott Decision and its Aftermath

On May 13, 1992, the Federal Circuit's opinion in *Strott v. Derwinski* affirmed an order of this Court dismissing for lack of jurisdiction an appeal of a decision of the Board of Veterans' Appeals (BVA or Board). Mr. Strott's claim for service connection was initially denied by an AOJ, here a VA regional office (RO), adjudicative decision on September 26, 1985. He filed an NOD on October 18, 1985. The RO again denied the claim in December 1985 and issued a Statement of the Case (SOC)

on June 2, 1986. On July 14, 1986, the claimant submitted to the RO a VA Form 1–9 (Appeal to the BVA) [hereinafter "1–9 Appeal"]. The RO issued another adverse adjudicative decision on January 27, 1987, and subsequently issued a Supplemental SOC (SSOC). On July 11, 1988, the BVA remanded the claim to the RO for further development. On February 28, 1989, the veteran filed an additional VA Form 1–9, purporting to express disagreement with a June 2, 1986, RO decision. He then appeared at a personal hearing before a hearing officer at the RO on June 5, 1989, and on July 17, 1989, the hearing officer issued a decision continuing the denial of the claim. The BVA denied the claim in an April 4, 1990, decision, and an appeal to this Court followed.

This Court dismissed Mr. Strott's appeal for lack of jurisdiction, holding that there was no valid NOD filed on or after November 18, 1988. *Strott*, 1 Vet.App. at 116. The Court did not consider the February 1989 1–9 Appeal to be a valid NOD because it purported to express disagreement with a supposed June 1986 RO decision, whereas the record revealed no RO decision of that date; and because, in any event, that 1–9 Appeal, having been filed more than one year after notice of any such AOJ decision presumably would have been mailed to the veteran, could not serve as a valid NOD as to such decision. *Ibid.*

In its May 1992 opinion affirming this Court's *Strott* order, the Federal Circuit expressly limited the multiple-NOD theory of this Court's opinion in *Whitt* (which had been followed by this Court in numerous ensuing cases). The Circuit considered and discussed a document—a September 7, 1989, letter to the RO expressing "disagreement with the June 5, 1989, RO hearing"—which had not been before this Court and which the appellant had presented to the Circuit as constituting a jurisdictionally valid NOD. *Strott*, 964 F.2d at 1127. Holding that such evidence was improperly presented to it in the first instance, the Federal Circuit considered that letter only for the purpose of determining whether the letter could constitute a valid NOD and thus require that the case be remanded for this Court to decide whether the letter was

in fact a valid NOD. Upon such consideration, the Circuit held that the June 5, 1989, hearing officer hearing was "part of the appellate process and as such, could not provide grounds for a jurisdiction-creating NOD." *Ibid.* The Court's analysis was as follows:

> A veteran's appeal ... [footnote omitted] of a benefits determination proceeds by the following course: (1) The Veteran (or other representative, as described in 38 C.F.R. § 19.128 [now § 20.201]), must file a NOD within one year of [the] date of mailing of the unfavorable rating determination. 38 C.F.R. § 19.129(a) [now § 20.302(a)]. The [RO] then prepares [an SOC], as described in 38 C.F.R. § 19.-120 [now § 19.29]. The Veteran or his representative has sixty days from the date of mailing of the [SOC] or the remainder of the year dating from the mailing of notification of the unfavorable rating determination (whichever is later) to file a VA Form 1–9 to perfect the appeal. 38 C.F.R. § 19.129(b) [now § 20.-302(b)]. The text of Form 1–9 informs the Veteran that he has the "right to request a personal hearing" and that "a personal hearing is not necessary nor is a decision made at the time of a hearing." ... It is clear from the regulations that this [RO] hearing is part of the appellate process, even when it occurs before personnel in the field office. 38 C.F.R. §§ 19.157(b) [now § 20.700(b)] and 19.-160(c) [now § 20.705(a)(3)].

Petitioner's appeal thus presents this court with the following legal question: Is a Form 1–9 hearing before personnel in the [RO] field office an action from which a petitioner may file a NOD, and thus obtain jurisdiction before the [Court of Veterans Appeals]? When the above-described appeal process is considered in light of *Prenzler v. Derwinski,* 928 F.2d at 394 [in which the Federal Circuit had stated that the "[AOJ] is the VA agency which adjudicated the claim *before an appeal to the Board";* the AOJ "is the agency which denied the original claim" (emphasis added)], the answer is clearly negative. Since the [RO] field office is acting in an appellate role, it is no longer the "agency of original jurisdiction." Accordingly, any written disagreement with that decision is not a valid NOD, 38 U.S.C. § 7105 and 38 C.F.R. § 19.118 [now § 20.201], and therefore cannot function as the statutory basis for [Court of Veterans Appeals] jurisdiction. To the extent that *Whitt v. Derwinski* suggests otherwise ..., it is overruled.

*Id.* 964 F.2d at 1127–28.

On July 31, 1992, the Circuit granted the Secretary's motion to vacate this Court's decision in the *Whitt* appeal. *Whitt v. Derwinski,* 979 F.2d 215 (Fed.Cir.1992) (single-judge order). The Secretary had argued "that [the Circuit's] ruling in *Strott* ... [was] dispositive of Whitt's appeal." *Ibid.* By unpublished order relying on the authority of the Federal Circuit's *Strott* opinion, the Federal Circuit remanded the appeal to this Court "with instructions to dismiss Whitt's appeal." *Id.* at 2. This Court subsequently dismissed Mr. Whitt's appeal on September 22, 1992. *Whitt v. Derwinski,* 3 Vet.App. 258 (1992) (single-judge order).

### C. The King and Hudson Cases

This Court has decided two cases by precedential panel action that come within the precise *Strott* sequence of facts—RO adjudication/NOD/1–9 Appeal/RO hearing/RO adjudication. In *King v. Derwinski,* this Court relied upon the Federal Circuit's *Strott* opinion to dismiss an appeal for lack of jurisdiction. *King,* 3 Vet.App. 242 (1992) (per curiam order). Mr. King had filed a 1–9 Appeal in 1982 requesting a hearing, and in 1986 had testified at a personal hearing before the RO "acting on behalf of the BVA". *Id.* at 243. The Court held that the appellant's December 1988 written disagreement with a July 1988 RO decision was not a valid NOD because, under *Strott,* "an appeal will not lie from an NOD to an adjudication made subsequent to a VA Form 1–9 hearing." *King,* 3 Vet.App. at 242.

Subsequently, in dismissing an appeal for lack of jurisdiction in *Hudson v. Principi,* this Court further clarified the application of *Strott. Hudson,* 3 Vet.App. 467 (1992). In *Hudson,* the appellant had filed a 1–9 Appeal requesting a hearing on his claim for an increased rating for a service-connected disability and, thereafter, in Oc-

tober 1988, had testified at a personal hearing before the RO acting on behalf of the BVA. *Id.* at 468. In a March 1990 RO decision, after the RO had received a report of an examination it had ordered, the veteran's disability rating was increased from 30% to 50%. In May 1990, the appellant filed with the RO a written disagreement with the March 1990 decision, to the extent that it was adverse (that is, had denied a rating in excess of 50%). The Court held that the March 1990 written disagreement was not a valid NOD under *Strott* and *King* because it was filed with respect to a claim as to which the claimant had previously filed a 1–9 Appeal and had appeared at a "VA Form 1–9 hearing". *Ibid.*

#### D. The Rowell Case

In *Rowell v. Principi*, 4 Vet.App. 9, 15 (1993), this Court held that the timely filing of an NOD under 38 U.S.C.A. § 7105 is a prerequisite to the exercise of jurisdiction by the BVA over an administrative appeal from an adverse RO determination. The Court held that to be timely filed the NOD must be "postmarked within one year after notice of an unfavorable RO decision is mailed to the claimant—or [be accepted] under the 'not inconsistent' regulations prescribed by the Secretary" (*ibid.*), which in 38 C.F.R. § 3.109(b) (1992) permit the Secretary to extend the one-year period for "good cause ... shown". As indicated in part I.E.4., below, *Rowell* provides important guidance on the operation of an NOD within the VA's administrative adjudication process.

#### E. Alternative Frameworks

The divergent dissenting opinions notwithstanding, the Court has sought to extract an analytically consistent rule from the Federal Circuit's *Strott* and *Whitt* actions, this Court's precedential decisions, and the parameters of the statutory provisions.

In his dissent, Judge Kramer transforms dictum into binding precedent. Judge Farley, on the other hand, expresses his strong preference for the original "analysis and holding" of this Court's opinion in *Whitt.* Dissenting opinion of Farley, J., *infra*, at 548. But, because of the Federal Circuit's

decisions, continued adherence to that course is not an option still available to the Court. We cannot ignore the Circuit's *Strott* opinion and *Whitt* order. The essence of Judge Farley's dissent is really directed at the Federal Circuit's partial overruling of and reversal in *Whitt* and derives from a futile hope that Humpty Dumpty can be put back together again *in toto* despite the fact that one of his principal components has been rendered totally inoperable. Our consideration of options, therefore, is limited to those consistent with the two Federal Circuit actions.

Beginning where the Federal Circuit left off, the following alternative approaches have been considered:

**1. Limiting Strott to its facts:** Such a limited construction is not an attractive option. Although the Federal Circuit in *Strott* does suggest that it is the RO hearing requested in the 1–9 Appeal that is the "appellate" function performed by the RO, it is clear that a claimant cannot express disagreement with a hearing. Rather, disagreement can be expressed only with a decision—a "determination" or "action" under statutory section 7105, or an "adjudicative determination" under regulation § 20.201. The Court finds the *Strott* analysis fully applicable in a case where no hearing was held after a 1–9 Appeal to the BVA had been filed. No decision of this Court has yet so extended *Strott;* the *King* and *Hudson* cases, *supra*, although perhaps unusual fact situations, both involved RO decisions made after a hearing held pursuant to a 1–9 Appeal. However, just as the RO in *Strott* was acting in "an appellate role" when it made its adverse adjudicative determination after having held a hearing on behalf of the BVA, so would the RO be acting in an appellate role if it were to make a post–1–9–Appeal decision without having held a hearing on behalf of the BVA. Thus, the Court finds no logical basis for restricting *Strott* to its precise facts.

**2. Making Filing of 1–9 Appeal Determinative:** Appellant Hamilton makes a credible argument that the Federal Circuit in *Strott* endorsed the multiple-NOD *Whitt*

holding as to other than the precise *Strott* fact sequence of a 1–9 Appeal, a hearing, and subsequent RO adjudication. This argument is based on the following *Strott* sentence: "If such a hearing and the subsequent decision of July 17, 1989[,] qualify as an 'adjudicative determination of an agency of original jurisdiction,' then it would be a jurisdiction-creating NOD." 964 F.2d at 1127. To the extent that this sentence bears such a reading, the Circuit's *action* in ordering this Court to vacate its *Whitt* opinion would be inconsistent with such a construction. That is because, as the ensuing discussion shows, in *Whitt* the October 21, 1988, RO hearing in question was a hearing conducted by the RO *for itself*, not for the BVA, and was not requested by Mr. Whitt in a 1–9 Appeal.

The relevant facts in *Whitt* were as follows: On August 12, 1988, the RO denied a VA pension claim. On August 22, 1988, the claimant filed an NOD on a VA Form 21–4138 ("Statement in Support of Claim"), in which he specifically requested a hearing, in his own words, "before the hearing officials at a hearing called by the VA." On October 4, 1988, the RO issued an SOC, which instructed the claimant to file a 1–9 Appeal within 60 days, and which also stated: "You will be notified by separate letter of the date and place of your requested personal hearing." R. at 70. On October 21, 1988, the claimant testified under oath at a personal hearing before the RO. On that *same day*, October 21, 1988, the RO received his 1–9 Appeal, in which he had specifically indicated (in box 9A) that he did *not* then wish to request a hearing before the BVA or the RO field office. The hearing officer then issued a decision, on November 8, 1988, denying the claim again, and on January 5, 1989, the claimant filed with the RO a written disagreement with that decision. R. at 89.

In its *Strott* opinion, the Federal Circuit held that a hearing requested *in the 1–9 Appeal* was part of the appellate process. In *Whitt*, on the other hand, it is clear that the October 21, 1988, RO hearing was *not* a hearing requested by the claimant in his 1–9 Appeal, but had been requested (and may

even have been held) before the 1–9 Appeal was filed.

In view of the foregoing, the Federal Circuit's *Whitt* single-judge order establishes two things. First, as concluded in part I.E.1., above, whether or not a post-1–9–Appeal–hearing is held is not determinative of the NOD issue; the Circuit in *Whitt* invalidated a "multiple" NOD notwithstanding that there had *not* been a post-1–9–Appeal hearing. Second, although the Federal Circuit in *Strott* specifically overruled *Whitt* to the extent that it was inconsistent with *Strott*, the Circuit's subsequent reversal of *Whitt* strongly suggests that the Circuit's invalidation of this Court's *Whitt* multiple-NOD theory extends beyond the facts of *Strott*.

Moreover, the Federal Circuit had an opportunity to hold that it was preserving parts of *Whitt* when it overruled the opinion in *Strott* and when in *Whitt* it vacated our judgment as to Mr. Whitt. The Circuit did not avail itself of that opportunity.

*3. Focusing Solely on the "Appellate Role":* Reliance solely on this helpful rubric, without further analysis, would not provide a complete conceptual framework because there is nothing in the law (or the regulations) which affords a basis for concluding that the "appellate role" does not begin with the filing of the NOD ("appellate review" is "initiate[d]" by that action according to section 7105(a)) rather than with the filing of the 1–9 Appeal, which "complete[s]" (section 7105(a)) or "perfects" (§ 19.123 (now § 20.202)) "appellate review". 38 U.S.C.A. § 7105(a) (West 1991); 38 C.F.R. § 20.202 (1992).

*4. Treating an NOD as an NOD:* The NOD referred to in VJRA § 402 is one "filed under section 4005 [now 38 U.S.C.A. § 7105] of title 38, United States Code". The purpose of the NOD, to which VJRA § 402 refers as one "filed under section 4005", is to "initiate" BVA "appellate review" by letting VA know, within one year from the date of VA's "mailing of notice of the result of initial review or determination [by the AOJ]", of the intent to appeal to the BVA. 38 U.S.C.A. § 7105(a), (b) (West 1991). Thus, the NOD is to obtaining BVA

review what a Notice of Appeal (NOA) under 38 U.S.C.A. § 7266(a) (West 1991) is to obtaining review in this Court if the NOA is filed "within 120 days after the date on which notice of the [RO] decision is mailed [by the BVA]." Just as there is no need to file more than one NOA to obtain review here, so there is no need to file more than one NOD to obtain BVA review of the denial of a particular claim.

In using the filing of the NOD after a date certain as a jurisdictional prerequisite for an appeal to this Court, Congress specifically and deliberately chose an action which claimants are required by law to take within a certain time period in order to obtain administrative appellate review by the BVA. 38 U.S.C.A. § 7105(b); *see Belarmino*, 931 F.2d at 1544; *Strott*, 1 Vet. App. at 116–17. Congress did not establish another kind of NOD for purposes of conferring jurisdiction on this Court over a particular case. Rather, it specifically provided in VJRA § 402 that the NOD securing basic eligibility for judicial review here would be one filed "under section [7105]", not a document which would be superfluous for purposes of securing entitlement to administrative appeal to the BVA.

The VA regulations adopted on February 3, 1992, and those proposed on that date and still pending provide evidence that the VA regulatory definition of an NOD now in 38 C.F.R. § 20.201 (1992) (formerly in § 19.118 (1987)) ("written ... dissatisfaction ... with an [AOJ] adjudicative determination") is not inconsistent with a rule that only one NOD may be filed with respect to a particular claim. In new 38 C.F.R. § 20.201, adopted in February 1992, VA used exactly the same language found in the § 19.118 definition in 1988. On the same day that it promulgated § 20.201, VA also proposed adding subsection (b) to § 20.201 (and redesignating existing § 20.-201 as § 20.201(a)) to provide that "only one [NOD] will be accepted[ ] with respect to any one issue." 57 Fed.Reg. 4088, 4135 (1992). This strongly suggests that the language of § 19.118 (now § 20.201) is not inconsistent with a requirement that only one NOD may be filed with respect to each claim. (The Court uses the term "claim" to refer to an application for VA benefits with respect to a specific "issue", as the latter term is used in the proposed, pending VA regulations. *See* 38 C.F.R. § 20.3(f) (1992) (a "claim" is an "application" for VA benefits); 57 Fed.Reg. 4088, 4134 (1992) (proposing new 38 C.F.R. § 20.3(k) to define "issue" generally as "the ultimate question to be decided in determining whether or not a particular benefit sought on appeal will be granted ...[,] includ[ing] all subsidiary questions which must be resolved in reaching that determination", and stating that "whether service connection should be granted for a particular disability" is an example of an "issue").)

■ Moreover, as the Federal Circuit's opinion in *Strott* indicates, the regulatory definition spells out what an NOD is by specifying its elements—(1) a written communication, (2) from a claimant or representative, (3) expressing disagreement with an AOJ adjudication—and not its effects. *See Strott*, 964 F.2d at 1126–27. The effect, really the function of the NOD, is prescribed by the operative statutory provisions of section 7105: as noted above, the NOD (1) initiates appellate review and (2) prevents the AOJ decision from becoming final one year after it is entered. Even if there were a conflict between the regulation and the law, the statutory provisions would prevail; any regulatory definition of an NOD must incorporate and be derived from the full context of section 7105 (formerly § 4005). Definitions, whether statutory or regulatory, are not themselves operative provisions of law. *See* SUTHERLAND STAT. CONST. § 27.02, at 459 (1985). Rather, such a statutory, or, as here, regulatory, definition is no more than an appositional phrase to be inserted, for interpretive purposes, after the defined term in the operative statutory provision—here section 4005 when VJRA § 402 was enacted in 1988. *Cf. Talley v. Derwinski*, 2 Vet.App. 282, 287 (1992) (statutory presumption of total disability based on objective factors does not restrict statute's operative provision establishing entitlement to benefits for total disability based on subjective factors).

██ Accordingly, we hold that there is no difference between a title 38 section 7105 NOD and one which is an NOD for purposes of VJRA § 402. A section 7105 NOD is one which carries out the function of initiating the appeal to the BVA. We further hold that no subsequent NOD may be found as to a claim with respect to the denial of which the NOD has been filed unless (a) the NOD has been withdrawn; or (b) the appeal has been closed by the RO due to the claimant's failure to file a timely 1–9 Appeal after issuance of the SOC (that is, the RO decision becomes final); or (c) the full benefits sought on appeal have been granted by the RO; or (d) a final appellate decision has been issued by the Board. In other words, only if the claimant would have to file another NOD in order to avoid an RO adjudication's becoming final after a year could there be a subsequent NOD. *See Rowell*, 4 Vet.App. at 15. This is the result proposed in the pending VA regulations published on February 3, 1992. *See* 57 Fed.Reg. 4088, 4134–35 (1992) (proposing 38 C.F.R. § 20.201(b)); *see also id.* at 4133 (proposing 38 C.F.R. § 19.39 to outline procedures for determining whether an appeal has been fully satisfied when the RO grants benefits sought in a claim that had been appealed to BVA).

One further aspect of this issue needs to be addressed. Section 7105(d)(1) directs an RO, upon receipt of an NOD, to undertake "such development or review action as it deems proper" prior to issuing an SOC. Under an interpretation of the Federal Circuit's *Strott* decision that would make the 1–9 Appeal and a subsequent hearing the defining events for determining when another NOD is precluded, such additional review by the RO, if it were to result in another adjudication, could conceivably give rise to another NOD, since no 1–9 Appeal would yet have been filed. However, viewing the VJRA § 402 inquiry as whether another NOD is required in order to preclude a claim from becoming final, it is obvious that RO re-review under section 7105(d)(1) could not give rise to another NOD because an NOD would already have been filed initiating review of that claim, and the appeal would proceed to the BVA

pursuant to that NOD, unless it were expressly withdrawn by the claimant, or a 1–9 Appeal were not filed, or all benefits that had been requested had been awarded. *See Rowell, supra.*

*5. Determining that an NOD Pertains to a Specific "Claim":* Although VJRA § 402 refers to the filing of an NOD in "a case", it does so only in terms of a filing "under section [7105]". Hence, section 7105 again provides the context. That context emerges from subsection (c) of section 7105, which sets forth the second major attribute of an NOD (the first is to "initiate" appeal to the BVA)—that an NOD stops an RO adjudication from becoming "final", a status which generally precludes a "claim" from thereafter being "reopened or allowed". Subsection (d)(1) of section 7105 is also claim-specific as to "the benefit sought", and subsection (d)(1)(A) refers to the "issue or issues with which disagreement is expressed". The word "claim" takes its statutory context from title 38 sections 5101(a)—"a claim" "for benefits to be paid or furnished"—and 5102, which, in effect, requires an application to be filed in making a claim for benefits. 38 U.S.C.A. §§ 5101(a), 5102 (West 1991); *see also Tucker v. Derwinski*, 2 Vet.App. 201, 202 (1992) (Court had jurisdiction over only one of three claims adjudicated by the BVA, because the other two claims had been the subject of pre-November 18, 1988, NODs and "the fact that the three appeals were fortuitously consolidated into one decision cannot give jurisdictional life to adjudications that Congress has forbidden this Court from considering").

The existing VA regulations deal with this very specifically by providing in 38 C.F.R. §§ 20.201 and 20.202 (1992) that the claimant is to specify in the NOD and 1–9 Appeal the issues with which he or she is expressing disagreement. The pending, proposed VA regulations would go further by providing a definition for "issue" and subissue. *See* 57 Fed.Reg. 4088, 4134 (1992) (proposing to add a new 38 C.F.R. § 20.3(k), quoted in part I.E.4, *supra*).

██ *6. Not Allowing a New NOD After RO Proceedings Pursuant to a BVA Re-*

*mand:* Pursuant to the above analysis, it is clear where the BVA has remanded a claim to the RO (and especially clear where the BVA has expressly provided that the claim will automatically be returned to the BVA for consideration after the RO action on remand is completed) that no valid section 7105 NOD could be filed with respect to the RO's adjudicative determinations on remand because the claim would still be on appeal to the BVA by virtue of the previous NOD and 1–9 Appeal. Since any expression of disagreement with the RO adjudications on remand could not be a section 7105 NOD for any claim as to which there was an adverse RO adjudication rendered prior to, and still pending, appeal to the BVA, any such document could not constitute an NOD conferring jurisdiction on this Court under VJRA § 402 as to such a claim.

This result would obtain whether or not the Board's remand instruction contained the automatic-return provision. The existing VA regulations anticipate such express instructions by providing that after the RO adjudication on remand "the case will be returned to the Board for further appellate processing" unless the RO grants all the benefits sought in the appealed claim and informs the veteran that the appeal has been closed, or the claimant withdraws the appeal. 38 C.F.R. § 19.38 (1992) ("[r]emanded cases will not be closed for failure to respond to the [SSOC]"), *see also* 38 C.F.R. § 20.1101(b) (1992) ("remand is in the nature of a preliminary order and does not constitute a final Board decision"). Consequently, RO adjudicative action as to a claim denied by the RO, appealed to the BVA, and then remanded from the BVA to the RO generally could not give rise to an additional NOD as to that claim for purposes of section 7105 and VJRA § 402. *See also* 57 Fed.Reg. 4088, 4133 (1992) (proposing 38 C.F.R. § 19.39 to establish that when RO grants some benefits in an appealed claim, the appeal to the Board will continue unless it is "clear" that all benefits sought have been granted, and that if there is "any question" whether all benefits sought have been granted, the appeal will continue unless the claimant notifies the RO that the award has completely satisfied the appeal). Although § 19.38 and proposed § 19.39 are somewhat ambiguous, we read VA's existing and pending regulations regarding remands to ROs as providing for automatic return to the BVA of only those remanded claims which were denied by the RO prior to the pre-remand appeal to the BVA.

### F. General Principles

The following general principles emerge from the preceding analysis:

First, we do not construe *Strott* as requiring that a 1–9 Appeal hearing (that is, a hearing carried out by the BVA, or RO for the BVA, following the filing of a 1–9 Appeal) is necessary before the administrative appellate process has begun.

Second, we overrule this Court's multiple-NOD holding in *Whitt,* 1 Vet.App. at 40. There can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant. *See* 57 Fed.Reg. 4088, 4135 (1992) (proposed to be codified at 38 C.F.R. § 20.201(b)). Accordingly, we also overrule *Malgapo,* 1 Vet.App. at 398–99, to the extent that it holds that a 1–9 Appeal as to a particular claim can itself be an NOD if filed after an NOD has already been filed as to that claim.

Third, where the BVA remands to an RO for further development and readjudication a claim previously decided by the RO and properly appealed to the BVA (*see Rowell,* 4 Vet.App. at 14–16) (unless all benefits sought are awarded on remand or the claimant expressly withdraws the appeal), an expression of disagreement with a subsequent RO readjudication on remand cannot be an NOD.

Fourth, where the BVA remands to an RO for development and adjudication a claim not decided by the RO (and as to which no NOD has ever been filed, and which thus is not an appealed claim) and the claimant files a timely expression of disagreement with the RO, that expression

is an NOD as to that claim, which then becomes an appealed claim, even though the BVA may also have remanded to the RO concurrently a claim which *had* been previously decided by the RO, as to which a prior NOD had been timely filed, and which thus was already an appealed claim.

### G. Retroactivity

The Court has considered the question of retroactive application of the holdings made today and takes note of two lines of Federal authority. One holds that a jurisdictional holding cannot be made prospective only. *See Budinich v. Dickinson and Co.*, 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379–80, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981): "court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only"); *U.N.R. Industries, Inc. v. United States*, 962 F.2d 1013, 1025 (Fed. Cir.1992). As the Federal Circuit held recently:

[W]e must abide by the 'age-old rule that a court may not in any case, even in the interests of justice, extend its jurisdiction where none exists.' *Christianson*, 486 U.S. at 818[, 108 S.Ct. at 2178] (1988); *see also Johns–Manville [Corp. v. United States]*, 855 F.2d [1556,] 1565 [(Fed.Cir.1988), *cert. denied*, 489 U.S. 1066[, 109 S.Ct. 1342, 103 L.Ed.2d 811] (1989)]. We have no discretion to apply this judgment only prospectively.

*Id.* 962 F.2d at 1017.

The other line of cases derives from *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), which the Supreme Court very recently reaffirmed and characterized as holding as follows:

[A] judgment rendered in a case in which it was ultimately concluded that the District Court was without jurisdiction was nonetheless res judicata on collateral attack made by one of the parties. *See also Stoll v. Gottlieb*, 305 U.S. 165[, 59 S.Ct. 134, 83 L.Ed. 104] (1938). In *Stoll*,

we observed that the practical concern with providing an end to litigation justifies a rule preventing collateral attack on subject matter jurisdiction. *Id.* at 172[, 59 S.Ct. at 137].

*Willy v. Coastal Corporation*, —— U.S. ——, ——, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); *see also Insurance Corp. of Ireland v. Compagnie Des Bauxites*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982) ("party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment"). In *Chicot County*, the Supreme Court further held:

The remaining question is simply whether respondents having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that res judicata may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, *"but also as respects any other available matter which might have been presented to that end"*. *Grubb v. Public Utilities Commission*, [281 U.S. 470, [50 S.Ct. 374, 74 L.Ed. 972] (1930)]; *Cromwell v. County of Sac*, [94 [(4 Otto)] U.S. 351[, 24 L.Ed. 195] (1876)].

*Chicot County*, 308 U.S. at 378, 60 S.Ct. at 320 (emphasis added).

The holdings in *Chicot County* were made even though the district court there had not specifically addressed its jurisdiction, which the Supreme Court held was lacking because the bankruptcy statute under which it was proceeding was subsequently declared unconstitutional. The Court stated:

There can be no doubt that if the question of the constitutionality of the statute had actually been raised and decided by the District Court in the proceeding to effect a plan of debt readjustment in accordance with the statute, that deter-

mination would have been final save as it was open to direct review on appeal. *Stoll v. Gottlieb, supra.*

*Id.* 308 U.S. at 377–78, 60 S.Ct. at 320. Finally, the Supreme Court set forth this philosophical approach to determining whether a later-found jurisdictional defect is to be applied retroactively:

> The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects—with respect to particular relations, individual and corporate, and particular conduct, private and official. *Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination.* These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.

*Id.* at 374, 60 S.Ct. at 318 (emphasis added).

■ Against this background, it is clear that this Court must apply the new jurisdictional rule to the three cases before it. As to future applications of this rule in cases not pending before the Court, we announce today our strong disinclination to apply the rule retroactively, absent extraordinary good cause to do so.

We will now apply the foregoing discussion to the three cases consolidated in this appeal. (Record page citations refer to the record on appeal in the case under discussion.)

## II. HAMILTON v. BROWN

*A. Facts:* The veteran filed his claim for service connection for post-traumatic stress disorder in April 1986. R. at 40. In May 1986, the RO denied the claim. R. at 49. In June 1986, the veteran filed an NOD. R. at 53. In July 1986, he filed a 1–9 Appeal and requested a hearing at the RO, as part of the "appellate process".

*See Strott,* 964 F.2d at 1128 ("It is clear from the regulations that [the 1–9 Appeal] hearing is part of the appellate process, even when it occurs before personnel in the field office. 38 C.F.R. §§ 19.157(b) and 19.160(c) [now §§ 20.700(b) and 20.-705(a)(3) ]."); R. at 61. He testified under oath before the RO in September 1986. R. at 63.

In June 1987, the BVA remanded the claim for the RO to obtain service personnel records and for a psychiatric examination of the veteran. R. at 85. The remand decision directed (presumably pursuant to VA regulations then in effect, 38 C.F.R. § 19.182(c) (1987) [now § 19.9]) that the RO readjudicate the claim after the required development; that, "[i]f the determination remains adverse to the veteran, the case should be returned to the Board together with all additional evidence developed"; and that "[n]o action is required of the veteran until he receives further notice." R. at 87. In January 1988, the RO again denied the claim. R. at 93. In February 1988, the RO issued an SSOC. R. at 95. In March 1988, the veteran's representative filed with the RO a statement expressing disagreement with the RO decision and the SSOC. R. at 102.

In December 1988, the BVA again remanded the claim to the RO, directing that another psychiatric examination be performed, and directing that the claim "be returned to the Board" if the decision on remand remained adverse and that "[n]o action is required by the veteran until he receives further notice". R. at 115. In February 1989, the RO denied the claim. R. at 127. On March 6, 1989, the RO issued an SSOC. R. at 128. On March 22, 1989, the veteran filed a 1–9 Appeal seeking appeal of a "3/17/89" decision and requesting a hearing at the RO. R. at 134. In May 1989, he testified under oath at an RO hearing. R. at 136. In August 1989, the hearing officer denied the claim. R. at 152. In September 1989, the veteran's representative filed a statement requesting review by the BVA. R. at 153.

On February 14, 1990, the BVA denied the claim in the decision which the claimant

has sought to appeal to this Court. On August 4, 1992, this Court issued an opinion vacating that BVA decision and remanding the matter to the Board for readjudication. *Hamilton v. Derwinski*, 2 Vet. App. 671 (1992). On August 18, 1992, the Secretary filed a motion for the Court to vacate its August 4 opinion and to dismiss the appeal for lack of jurisdiction.

■ *B. Analysis:* The Secretary's August 18, 1992, motion to vacate the Court's opinion and dismiss the appeal is a timely challenge to this Court's jurisdiction, and the Court is thus required to consider it. *See Budinich*, 486 U.S. at 203, 108 S.Ct. at 1722; *U.N.R. Industries, Inc.*, 962 F.2d at 1025; *Skinner*, 1 Vet.App. at 3; discussion in part I.G., above. Pursuant to Rule 35 of the Court's Rules of Practice and Procedure, either party, within 14 days after the date of a Court decision, may move for reconsideration or en banc review of such decision. Therefore, the Secretary's August 18, 1992, jurisdictional challenge, which was raised within the 14–day period for requesting reconsideration or review, is not a collateral jurisdictional attack on a prior final judgment of this Court and is not subject to the principle, announced in part I.G., above, that the Court is strongly disinclined to apply today's jurisdictional ruling retroactively as to cases not pending before the Court.

Having thus considered the Secretary's motion, the Court holds that this appeal must be dismissed for lack of a jurisdictionally valid NOD, because the RO's actions on remand related to the original claim which had already been placed in an "appellate" status (*Strott*, 964 F.2d at 1128) by the June 1986 NOD. Therefore, there was no function that a new NOD could have performed in VA's adjudication process and, consequently, a VJRA § 402 NOD could not have been filed insofar as this Court's jurisdiction is concerned.

### III. CONTRERAS v. BROWN

*A. Facts:* In June 1986, the veteran filed his claim for service connection of a *right*-knee disability. R. at 67. In a December 1986 decision, the RO indicated that the claim actually comprised two claims—a claim that a preexisting *right*-knee injury had been aggravated by service, and a claim under 38 U.S.C. § 351 (now § 1151) (hereinafter referred to as "section 1151 claim") that his *right*-knee injury had been aggravated by treatment during his participation in a VA Medical Center (MC) drug rehabilitation program (the specific allegations of this section 1151 claim were later clarified in his June 1987 testimony, as explained below). R. at 72–74. The RO denied both claims. R. at 72–74. In March 1987, the veteran filed an NOD. R. at 70. In April 1987, the RO issued an SOC. R. at 66–69. In a March 1988 Form 21–4138, the veteran raised two additional section 1151 claims, asserting that he had suffered an injury to his *left* knee and back as a result of treatment at a VA facility. R. at 62–63. (The veteran's 1–9 Appeal is not in the record. It further appears that the veteran testified before the RO in June 1987, but the transcript of that hearing is also not in the record.)

On May 12, 1989, the BVA issued two decisions. One of those decisions denied the claim for direct service connection of the *right*-knee condition and is not involved in the instant appeal. R. at 48. The other decision remanded to the RO the veteran's section 1151 claim for service connection of the *right* knee. R. at 53. In the decision remanding, the Board stated that the veteran, in his June 1987 RO hearing testimony, had stated that he had injured his *left* knee during a VA drug rehabilitation program in October 1985 when he was forced to scrub a floor with a toothbrush; that the resulting *left*-knee disability had caused a fall in March 1986, resulting in additional injury to his *right* knee; and that, during surgery at a VA hospital in March 1986 to repair his *right* knee, his back had been injured due to VA negligence. R. at 54. The Board noted that the veteran's section 1151 claim for service connection of the *right*-knee disability was dependent upon his section 1151 *left*-knee claim, and that the RO had not previously adjudicated the *left*-knee and back claims. The Board, therefore, remanded the section 1151 *right*-knee

claim to the RO and instructed the RO on remand to adjudicate the not-yet-adjudicated section 1151 *left*-knee and back claims. R. at 54–55. The Board stated that the veteran should be given a chance to respond to the decision before the records were returned to the Board and that "[n]o action is required of the veteran until he is further notified." R. at 55.

In July 1989, the RO denied service connection under section 1151 for the *right*-knee, *left*-knee, and back disabilities (R. at 46), and on July 24, 1989, issued an SSOC, along with a letter stating:

> If this [SSOC] ... contains an issue which was not included in any prior [SOC or SSOC], you must respond *within 30 days* to perfect your appeal of the new issue. If you do not timely file a Substantive Appeal [a 1–9 Appeal] as to the new issue(s), we will place your records on the docket of the [BVA] for review of the *prior* issues, and the [BVA] will provide you with a copy of its decision.

R. at 42–45 (emphasis added). On September 14, 1989, the veteran's representative filed with the RO a statement in support of the veteran's appeal to the BVA that stated that the veteran had failed to respond to the SSOC within the RO-prescribed 30–day period, and requesting review by the BVA of the *left*-knee and back claims. R. at 37. The record also contains an undated letter from the veteran in response to the July 24, 1989, SSOC. R. at 38. In an October 2, 1989, adverse decision, the RO noted that it had received the veteran's response to the SSOC (apparently the undated letter), and directed that the claim be returned to the BVA. R. at 36.

In April 1990, the BVA again remanded to the RO the section 1151 *right*-knee, *left*-knee, and back claims, with instructions to obtain new copies of hospitalization records which apparently had been separated from the claims folder. R. at 14–16. The Board further provided that the RO was required to issue an SSOC if the claim remained denied after the RO action on remand, and that, "[a]fter [the veteran and his representative] have had adequate opportunity to respond, the case should be returned to the

Board for further appellate review, if otherwise in order." R. at 16. There is no indication in the record that the RO ever issued another decision pursuant to that remand. The claim was apparently returned directly to the BVA for adjudication. On March 28, 1991, the Board denied service connection under section 1151 for the *right*-knee, *left*-knee, and back disabilities.

■ **B. Analysis:** As to the *right*-knee section 1151 claim, the Court holds that there is no jurisdictionally valid NOD and the Court is thus without jurisdiction because the appeal as to that claim had been initiated by the veteran's March 1987 NOD. (As noted above, the veteran's claim for *direct* service connection for a right-knee disability was finally denied by the May 12, 1989, BVA decision and is not part of the present appeal.)

■ However, there is a valid NOD as to the section 1151 *left*-leg and back claims. There is no indication in the record that these two claims were before the RO at the time of its initial determination in December 1986, and, therefore, the veteran's March 1987 NOD as to that determination did not, because it could not, comprehend those claims. The RO's July 1989 denial pursuant to the BVA remand was the first adjudication of those claims, and the September 14, 1989, letter from the veteran's representative requesting review of the *left*-leg and back claims thus constitutes a valid NOD as to those claims. The Court notes that, despite the RO's 30–day notice warning, the RO was authorized to require from the claimant, under law and regulation, only that he file an NOD within one year from the date on which notice of an adverse RO adjudication was sent or file a 1–9 Appeal within 60 days after an SOC or SSOC. In this case, notwithstanding the RO's notice, the claimant was entitled to a period of one year from the date of the July 1989 RO adverse adjudication in order to respond with an NOD to the initial denial of those claims.

## IV. POWELL v. BROWN

*A.  Facts:* In December 1985, the veteran initially filed claims for service connection for lung cancer, tuberculosis (TB), and "nerves". R. at 137. On August 12, 1986, the RO deferred a decision on those claims pending receipt of service medical records and verification of radiation exposure. The veteran's radiation-exposure information was subsequently received from the Air Force in March 1987, R. at 189, having been reconstructed pursuant to evidence of his participation in OPERATION REDWING, R. at 181. On August 7, 1987, the RO denied service connection for left-lung cancer and Hodgkin's disease (HD) as unrelated to the veteran's in-service radiation exposure. R. at 194–95. (The RO apparently included the HD claim because the veteran's medical records showed that he had the disease and that he related it to his in-service radiation exposure. R. at 187–93, 258–60.)

On November 20, 1987, the veteran filed an NOD and requested a hearing. R. at 196. On January 9, 1988, the RO issued an SOC. R. at 197. On April 28, 1988, the veteran filed a 1–9 Appeal, and requested a hearing at the RO (as part of the "appellate process"). R. at 202. In that 1–9 Appeal, the veteran (through his representative) stated that he suffered from numerous diseases, including lung cancer, HD, autoimmune hemolytic anemia, premature aging, osteoporosis, osteomyelitis, and a lymphatic disorder. *Ibid.* In May 1988, he submitted a memorandum in support of his claims, asserting entitlement to service connection based on radiation exposure for the numerous conditions listed in the 1–9 Appeal. R. at 204–22.

On June 1, 1988, he testified under oath at an RO hearing. R. at 223–48. The hearing officer asked whether the veteran wanted to amend his claim to include the issues of service connection for conditions other than lung cancer and HD; after some discussion, in which the veteran stated that he did not want his claim to be delayed any further and a recommendation by the hearing officer that he proceed only with the two claims, the hearing officer stated that he would leave the claim as it was and that "the only issue will be service connection for carcinoma of the lung and [HD] with anemia." R. at 247. Despite this, on January 10, 1989, the RO denied service connection for osteomyelitis, osteoporosis, and premature aging, as well as for lung cancer and HD with anemia. R. at 262.

On January 19, 1989, the veteran's representative sent a letter to the RO, submitting evidence of the veteran's exposure in service to additional radiation, pursuant to his refueling of airplanes that had participated in nuclear testing in OPERATION TEAPOT. R. at 267–73. On January 27, 1989, the RO issued an SSOC, addressing only the issues of service connection for lung cancer and HD. R. at 264. In March 1989, the veteran submitted a "Supplemental Memorandum In Support Of Service–Connected Veteran's Disability Benefits", setting forth "additional facts" (concerning his participation in OPERATION TEAPOT) and asserting that he had submitted sufficient evidence of service connection for "his many medical afflictions", though not specifically mentioning osteomyelitis, osteoporosis, or premature aging. R. at 274–80.

On May 17, 1989, he again testified under oath before the RO. R. at 281–86. On March 20, 1990, the hearing officer denied service connection for lung cancer and HD. R. at 290. On April 2, 1990, the RO issued an SSOC as to those two claims. R. at 293. On June 6, 1990, the veteran filed another 1–9 Appeal, referring specifically only to lung cancer. R. at 295. On May 7, 1991, the BVA denied service connection for lung cancer and HD. It did not mention osteomyelitis, osteoporosis, or premature aging. In his Statement of Issues and brief filed in this Court on August 19, 1991, and March 25, 1992, respectively, the appellant, through counsel, specifically challenged the BVA's failure to adjudicate the latter three claims.

█ *B.  Analysis:* As to the lung-cancer and HD claims, the Court holds that there is no jurisdictionally valid NOD and that the Court, therefore, has no jurisdiction (even on the narrowest interpretation of the Federal Circuit's opinion in *Strott,*

*supra,* and this Court's decision in *King, supra* ).

As to the osteoporosis, osteomyelitis, and premature aging claims, however, at the June 1988 RO hearing, the claimant had decided, pursuant to discussion with and recommendation from the RO hearing officer, to limit the case then under adjudication to the issues of service connection for lung cancer and HD. *See* R. at 245–47. Although our decisions in *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991), and *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991), require that the Board and the RO adjudicate all claims reasonably raised by the claimant up until its decision, a corollary of that rule is that where, as here, the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor BVA has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant or his or her representative.

A contrary result would permit the RO or Board to act in a way that could prejudice a claimant's enjoyment of statutory and regulatory procedural rights (such as a detailed SOC under section 7105(d)) by deciding a claim on a record that had not been adequately developed. *See, e.g.,* 38 C.F.R. § 3.103 (1992) (right, inter alia, to written notice of an RO decision on the claim, to a hearing, to representation, to produce witnesses and introduce any available evidence and any arguments, and to VA assistance); *Bernard v. Brown,* 4 Vet.App. 384, 392–94 (1993). After that June 1988 hearing, the veteran's representative did, on one occasion, refer to the veteran's "many disabilities" resulting from radiation exposure but did not specifically mention osteomyelitis, osteoporosis, or premature aging. Thereafter, those three claims were not mentioned by the claimant, his representative, the RO (including in the SSOC), or the BVA until appellant, through counsel, filed his Statement of Issues in this Court on August 19, 1991, asserting, inter alia, that the Board had erred in failing to make findings regarding the relationship of osteomyelitis, osteoporosis, and premature aging to the veteran's radiation exposure.

Moreover, there seems to be no indication that the veteran ever filed the requisite formal application as to the three additional claims. *See* 38 U.S.C.A. § 5101(a) (West 1991) (claim must be filed in form prescribed by Secretary in order for benefits to be paid under laws administered by VA); 38 C.F.R. § 3.150(a) (1992) (to the same effect). "If a claimant's application ... is incomplete, the Secretary shall notify the claimant of the evidence necessary to complete the application" and "no benefits may be paid or furnished by reason of such application" unless such necessary evidence is received within one year after the date of such notification. 38 U.S.C.A. § 5103(a) (West 1991). As a legitimate exercise of his authority, under 38 U.S.C.A. § 501(a)(2), (4) (West 1991), to prescribe regulations, "consistent with" the laws administered by VA, regarding "the form of application by claimants ... and .... the manner and form of adjudications", the Secretary has prescribed regulations providing for "informal claims". Those regulations provide:

> Any communication or action indicating an intent to apply for one or more benefits under laws administered by [VA] ... may be considered an informal claim. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within 1 year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim.

38 C.F.R. § 3.155(a) (1992).

In *Quarles v. Derwinski,* 3 Vet.App. 129, 137 (1992), and *Servello v. Derwinski,* 3 Vet.App. 196, 200 (1992), the Court held that "the one-year filing period for such applications did not begin to run" (*ibid.*) where VA did not forward the claimant a formal application form once his informal claim had been received and that, therefore, the date on which the informal claim was received "must be accepted as the date of his 'claim' or 'application' for purposes

of determining an effective date...." *Servello,* 3 Vet.App. at 200.

■ On the facts before us in this appeal, accordingly, any failure on the part of the veteran to file a formal application as to his osteoporosis, osteomyelitis, and premature aging claims is deemed waived by the VA's failure to comply with the section 3.155(a) requirement to send him the formal application forms. *See Smith v. Derwinski,* 2 Vet.App. 429, 431–35 (1992) (VA failure to notify of filing deadline excuses late filing). This lack of a formal claim thus further flaws the RO's January 1989 adjudication of those claims.

In view of the foregoing analysis, the January 1989 RO decision was thus procedurally flawed as to the osteomyelitis, osteoporosis, and premature aging claims, which remain pending appropriate development and adjudication at the RO in accordance with applicable law and regulation (including the issuance of an SOC by the RO and the filing of a 1–9 Appeal by the veteran). *See* 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.103, 3.155, 19.26, 19.29, 19.30 (1992); *Bernard, supra.* Nevertheless, for the reasons set forth in part III., above, as to *Contreras,* the Court holds that the January 1989 RO decision, although flawed, was the first RO adjudication of the added claims and that the veteran's March 1989 "Supplemental Memorandum" (R. at 274–80) satisfies the criteria for an NOD as to that adjudication, since it was filed by the claimant within one year after the RO determination and was a written communication expressing dissatisfaction with that adjudication and confirming his desire to contest the denial. *See* 38 U.S.C.A. § 7105(a), (b); 38 C.F.R. § 20.201.

## V. CONCLUSION

For the foregoing reasons, the appeal in *Hamilton* is dismissed for lack of jurisdiction. In *Contreras,* the appeal is dismissed for lack of jurisdiction as to the right-knee claims; as to the left-leg and back claims, the Court holds that it has jurisdiction over the appeal. In *Powell,* the appeal is dismissed for lack of jurisdiction as to the lung cancer and HD claims; as to the osteoporosis, osteomyelitis, and premature aging claims, the Court holds that it has jurisdiction over the appeal. Because the Court's October 7, 1992, order provided for en banc review only of the jurisdictional question, the responsibility for reviewing the appeals of the two claims in *Contreras* and the three claims in *Powell,* as to which the Court has jurisdiction, is returned to the screening judge to proceed in accordance with this Court's Internal Operating Procedures and its Rules of Practice and Procedure.

APPEAL DISMISSED as to *Hamilton.*

APPEAL DISMISSED in part as to *Contreras* and as to *Powell.*

KRAMER, Associate Judge, dissenting:

The majority opinion is built upon the premise that the law regarding notices of disagreement (NOD in singular) is unsettled and a vacuum needs to be filled:

> In reaching the decision to abandon our *Whitt* multiple-NOD holding, the Court is not suggesting that the Federal Circuit's *Strott* decision or *Whitt* action compels such a result. The Circuit has left unresolved how much of *Whitt* remains viable. Recognition of this vacuum has impelled the Court to reexamine the multiple-NOD concept in light of the substantial part of it that the Federal Circuit has clearly invalidated in *Strott* and *Whitt,* and to conclude that the better result under those circumstances is to abandon that concept altogether in favor of achieving the most rational construction of the statute consistent with the Federal Circuit's actions invalidating subsequent putative NOD's in *Strott* and *Whitt.*

*Ante* at 531. While the opinion is brilliantly written advocacy as to why the law should be changed and what it should be, the premise upon which it is built is fatally flawed because, except with respect to a single minor issue, *see infra,* the law is not unsettled and no vacuum needs to be filled.

Under that rubric, however, the effect of the opinion is to reverse obliquely the Fed-

eral Circuit's holding in *Strott v. Derwinski*, 964 F.2d 1124 (Fed.Cir.1992). That holding is as follows: First, *Strott* emphasized that an NOD can be filed only with respect to *"an adjudicative determination* of an *agency of original jurisdiction."* *Strott*, 964 F.2d at 1127 (quoting 38 C.F.R. § 19.118 (1991)) (similar provision now codified at 38 C.F.R. § 20.201 (1992)) (emphasis in *Strott*). Second, *Strott* stated that " '[t]he agency of original jurisdiction is the VA agency which adjudicated the claim *before an appeal to the Board.'* " *Id.* (quoting with approval from *Prenzler v. Derwinski*, 928 F.2d 392, 394 (Fed.Cir.1991) (emphasis in *Strott*)). Third, *Strott* determined that even where a previous NOD had been filed ("the NOD of October 18, 1985"),

> [i]f ... a hearing and the subsequent decision of July 17, 1989 qualify as an "adjudicative determination of an agency of original jurisdiction," then [another NOD] would be a jurisdiction-creating NOD. However, we hold that the June 5, 1989 hearing is part of the appellate process and as such, could not provide grounds for a jurisdiction-creating NOD.

*Id.* At this juncture, *Strott* has now determined that any NOD is valid for jurisdictional purposes as long as it is filed with respect to an adjudication rendered before the filing of an appeal to the Board of Veterans' Appeals (BVA).

Finally, *Strott* concluded that where a VA Form 1–9 had been filed and a hearing held pursuant to such filing, a subsequent adjudication was made in "an appellate role", rather than by "the 'agency of original jurisdiction' "; that "[a]ccordingly, any written disagreement with that decision is not a valid NOD"; and that, "[t]o the extent that *Whitt v. Derwinski* suggests otherwise, 1 Vet.App. 40, 47 [1990], it is overruled." *Strott*, 964 F.2d at 1128. Thus, where *Whitt*, as decided by the U.S. Court of Veterans Appeals, had permitted a valid NOD to be filed (on or after November 18, 1988) to any adjudication made at any time during the processing of a claim, *Strott* limited the rule of *Whitt* to apply only to those adjudications made before the claim reached appellate status. In *Whitt v. Der-*

*winski*, 979 F.2d 215 (Fed.Cir.1992) (single-judge order), the Federal Circuit simply inferred from its precedent in *Strott* that an adjudication rendered subsequent to the filing of a VA Form 1–9 is an adjudication rendered during appellate status. Except for the question of whether a VA Form 1–9 can serve as a valid NOD, *see Strott*, 964 F.2d at 1127 ("assuming arguendo that a Form 1–9 could ... serve [as a valid NOD]" ), the law is settled and no vacuum needs to be filled. That law provides that a valid NOD is filed where the following conditions are met:

1. The NOD is filed on or after November 18, 1988.

2. The NOD is the first NOD filed to a particular adjudication. *See Whitt*, 1 Vet.App. at 45 ("While there can be more than one effective NOD involving a particular claim, there can only be one effective NOD with respect to each adjudicative determination of an agency of original jurisdiction and that must, of necessity, be the first document filed....")

3. The adjudication to which the NOD was filed was rendered before the filing of an appeal to the BVA.

For the foregoing reasons, I respectfully dissent.

FARLEY, Associate Judge, dissenting:

When a veteran files a Notice of Disagreement (NOD) with an adverse decision on a claim for benefits, the Department of Veterans Affairs (VA) Regional Office (RO), also referred to as the agency of original jurisdiction (AOJ), is specifically authorized to "develop and review the claim again." 38 C.F.R. § 19.119(a). As has been demonstrated by numerous records on appeal, the AOJ often considers additional evidence submitted with an NOD and/or conducts a hearing and/or "review[s] the claim again" with the end result being another adjudication at the AOJ level. The prior denial is usually confirmed but, one must suppose, the AOJ may on occasion grant the claim.

"Appellate review will be initiated by a notice of disagreement and completed by a

substantive appeal after a statement of the case is furnished...." 38 U.S.C. § 7105(a). The corresponding regulation, 38 C.F.R. § 19.117, provides that an NOD, by itself, is insufficient to change the status of a claim from the adjudicatory to the appellate level: "An appeal consists of a timely filed notice of disagreement in writing and, after a statement of the case has been furnished, a timely filed substantive appeal." The latter requirement is fulfilled by the filing of a VA Form 1–9 which perfects the appeal.

In *Whitt v. Derwinski*, 1 Vet.App. 40 (1991), the Court specifically noted that an AOJ often renders multiple adjudications on a claim prior to the perfection of an appeal to the Board of Veterans Appeals (BVA or Board). *See Whitt*, 1 Vet.App. at 42; *see also* separate opinion of Farley, J., concurring in part and dissenting in part, 1 Vet.App. at 47–48. In recognition of these multiple adjudications at the AOJ level, we held in *Whitt* that there can, but need not, be multiple NODs. Having so held, we then considered motions to dismiss in four distinct consolidated appeals in which multiple NODs had been filed. We denied the motions in two appeals because the NODs were timely and granted the motions in two where the NODs were not timely.

Subsequently, in *Strott v. Derwinski*, 964 F.2d 1124 (1992), the United States Court of Appeals for the Federal Circuit, in a narrowly-drawn holding, ruled that when the AOJ conducts a hearing in response to a request made by checking a block on the "appeal perfecting" VA Form 1–9, the "field office is acting in an appellate role [and] is no longer the 'agency of original jurisdiction.' Accordingly, any written disagreement with that decision is not a valid NOD ..." *Strott*, 964 F.2d at 1128. To the extent that it "suggests otherwise," *Whitt* was expressly overruled. *Id.*

The Federal Circuit did not specifically rule on the issue whether there could be multiple NODs arising from multiple AOJ adjudications. However, in dicta, it did opine that "[i]f such a hearing [at the AOJ] and the subsequent decision of July 17, 1989 qualify as an 'adjudicative determina-

tion of an agency of original jurisdiction,' then it would be a jurisdiction-creating NOD." *Id.* 964 F.2d at 1127.

In a single-judge Order dated July 31, 1992, which states that it "is not citable as precedent," the Federal Circuit granted the motion of the Secretary to vacate this Court's decision in *Whitt*. The Order confines itself "to that portion of the Court of Veterans Appeals decision addressing Whitt's appeal" and it is premised upon the belief that "Whitt's appeal raises the same issue that this court addressed in *Strott*." *Whitt v. Derwinski*, 979 F.2d 215 (Fed.Cir. 1992). Although the issues were not exactly the same (*Whitt* involved a request for a hearing by the AOJ, not a request for VA Form 1–9 hearing), the Federal Circuit premised its decision upon that supposition and, even assuming that the issue was identical in both cases, the threshold analysis and holding of *Whitt* remains unchanged by any Federal Circuit decision. As the majority is compelled to concede, there is nothing that the Federal Circuit has done, either in *Strott* or in the single-judge vacation of the "decision addressing Whitt's appeal," which requires this Court to venture from its holding that there can be multiple NODs from multiple adjudications by the AOJ.

The departure from the multiple adjudications/multiple NODs rule today by the majority thus is not compelled by Federal Circuit decisions; nor is it required by any new law or a change in existing law. Instead, the rule of *Whitt* is being abandoned for a single and simple reason: the majority prefers to do so. While I do not question the power of the majority to take such a step, I cannot join the majority because I find its analysis unpersuasive and its conclusion violative of the principles of *stare decisis*.

As Justice Brandeis himself observed, ... in commenting on the presumption of stability in statutory interpretation: "Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right.... This is commonly true, even where the

error is a matter of serious concern, provided correction can be had by legislation."

*Square D. Co. v. Niagara Frontier Tariff Bureau,* 476 U.S. 409, 424, 106 S.Ct. 1922, 1930, 90 L.Ed.2d 413 (1986) (quoting *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting).)

While I do not believe that the doctrine of *stare decisis* would serve as a bar to this Court changing a rule of law in appropriate circumstances, I do believe that the principles of the doctrine require that any such change be effected only when necessary and then only with a full explanation. One searches the majority opinion in vain for a discussion of either the necessity of or the reason for abandoning *Whitt.* These omissions are particularly glaring in light of the counsel of Justice Brandeis on the importance of the doctrine of *stare decisis.* In my view, it is even more important that the "applicable rule of law be settled" in the new and emergent body of veterans law.

In place of the multiple adjudications/multiple NODs rule of *Whitt,* the majority has substituted a rule of decision which ignores the fact that the VA adjudicates and readjudicates claims daily at the AOJ level. Moreover, as evidenced by its enigmatic discussion of the retroactivity of its new rule in part I.G., the majority may have given rise to more questions than it resolved. In any event, I am unpersuaded by the majority's eloquence, its analysis, or its purporting to have "achiev[ed] the most rational construction of the statute." *Ante* at 548. I remain of the view that *Whitt* was and remains better reasoned and more reflective of the VA's claims adjudication process. Until today, our holding in *Whitt* remained in force, was not reversed, and, in my view, is as consistent with the governing statutes and regulations as it was when it was handed down. Because I would not depart from the analysis and holding of *Whitt,* I dissent.