# United States Court of Appeals for the Federal Circuit

---

**GENE S. GROVES,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-2081

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-3084, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge Joseph L. Falvey, Jr.

---

Decided: May 17, 2022

---

GENE S. GROVES, Shafter, TX, pro se.

JOSEPH ALAN PIXLEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

CAROLINE LOURGOS, Kirkland & Ellis LLP, Chicago, IL,

argued for amici curiae Jason M. Wilcox, Caroline Lourgos. Also represented by JASON M. WILCOX, Washington, DC.

_____

Before MOORE, *Chief Judge*, LOURIE and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.

Gene S. Groves appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a Board of Veterans' Appeals ("Board") decision denying Mr. Groves entitlement to Department of Veterans Affairs ("VA") Vocational Rehabilitation and Employment ("VRE") benefits. *See Groves v. McDonough*, 33 Vet. App. 368 (2021) ("*Decision*"). Because we find that the Veterans Court legally erred in finding that the Board was compelled to grant Mr. Groves an automatic indefinite stay of proceedings, we vacate and remand.

BACKGROUND

Mr. Groves served in the U.S. Army on active duty from January 1970 to August 1971, including service in Vietnam. In October 1990, a VA regional office ("RO") awarded Mr. Groves benefits for post-traumatic stress disorder, shell fragment wounds, and a nerve injury. In August 1998, Mr. Groves sought education benefits through the VA's VRE program, under Chapter 31, Title 38, of the U.S. Code.[1] A veteran requesting services under Chapter

_____

[1] The Vocational Rehabilitation and Employment (subsequently renamed "Veteran Readiness and Employment") program is intended to "provide for all services and assistance necessary to enable veterans with service-connected disabilities to achieve maximum independence in daily living and, to the maximum extent feasible, to become employable and to obtain and maintain suitable employment." 38 U.S.C. § 3100; 38 C.F.R. §§ 21.1(a), 21.70.

31 must, among other responsibilities, conform to procedures established by the VA governing pursuit of a rehabilitation plan, including enrollment in a course and cooperation with VA staff in carrying out an initial evaluation. *See* 38 C.F.R. § 21.362(c). Mr. Groves never attended the initial VRE evaluation—due at least in part to the isolated nature of his town and his asserted inability to travel—notwithstanding the VA counseling officer's attempts to accommodate Mr. Groves over a period of years. In December 2000, Mr. Groves appeared at a VA Vocational Rehabilitation Office and delivered a document to his counselor stating that the "President [had] arranged for [his] Vocational Rehabilitation needs to be taken care of away from the El-Paso VA facility, [such that the counselor could] close his files." S.A. 40. Mr. Groves informed the rehabilitation counselor that he saw "no reason to meet" at that time. *Id.*

Thereafter, the VA notified Mr. Groves "that all action on his claim for VRE benefits had been suspended and that his claim had been placed in discontinued status, due to his failure to complete the required evaluation." *Id.* Mr. Groves reapplied for VRE benefits in February 2001, but again "appear[ed] . . . not willing to undergo a vocational evaluation to assess his vocational needs," according to his counselor. S.A. 41. In April 2001, the VA again placed Mr. Groves's claim in "discontinued" status and notified him that VRE services could not be provided until he completed the required counseling. S.A. 29. Mr. Groves filed a Notice of Disagreement in response to the VA's decision on his claim.

In December 2005, the Board denied Mr. Groves entitlement to VRE benefits based upon his failure to cooperate. On appeal, the Veterans Court vacated the Board decision and remanded the case for the Board to address whether the VA had complied with various regulatory requirements before denying VRE services to Mr. Groves. In June 2012, while Mr. Groves's claim was still being

considered by the Board, Mr. Groves sent the VA a letter in which he stated that he "enjoin[ed] the RO and [Board] from further action . . . regarding the [VRE] claims due to the destruction of records[] and repeated [c]onstitutional and due process violations." S.A. 2–3.

The Board determined that the notice from Mr. Groves did not constitute a withdrawal of the appeal, and in January 2013, it remanded his VRE claim to the RO for proper notice to Mr. Groves and to schedule an initial VRE evaluation. The RO made repeated attempts to schedule Mr. Groves for his initial counseling, with no success. In October 2016, Mr. Groves sent another letter to the VA, stating that he was "enjoining the agency 'from any further adjudication of his claims.'" S.A. 4 (citation omitted). Therein, he quoted the Veterans Court's decision in *Hamilton v. Brown*, 4 Vet. App. 528, 544 (1993) (en banc), stating that "where . . . the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor the Board has authority to adjudicate those specific claims . . . ." Appellant's Mot. to Suppl. R. at 1, ECF No. 38. However, Mr. Groves provided no reason as to why he required additional time. *Id.*[2] In a November 2016 decision, the Board acknowledged

---

[2]    In his supplemental brief, Mr. Groves appears to argue that a stay is necessary because the VA has not acted on his request for equitable relief. *See* Groves Suppl. Br. at 8–10, ECF No. 24. Pursuant to 38 U.S.C. § 503(a), equitable relief may be available if the Secretary of the VA determines that a veteran has been denied benefits due to an administrative error. It is within the VA's discretion to postpone resolution of a veteran's request for equitable relief pending appeal. *See Burris v. Wilkie*, 888 F.3d 1352, 1358–59 (Fed. Cir. 2018); *see also, e.g.*, *Alford v. McDonough*, Case No. 2021-2029, 2022 WL 1097362, at *1 (Fed. Cir. Apr. 13, 2022) (non-precedential) (observing that

Mr. Groves's letter but again determined that it did not constitute a withdrawal of the appeal.  The Board then remanded the VRE claim for the RO to issue a Supplemental Statement of the Case.  In March 2017, the supplemental statement issued, informing Mr. Groves that "the claim remained denied[] and identif[ying] the evidence considered in reaching this determination."  S.A. 42.

In July 2017, on appeal from the remand decision, the Board denied Mr. Groves entitlement to VRE benefits.  Although the Board acknowledged Mr. Groves's "numerous motions to enjoin the Board from issuing a decision with regard to the VRE claim," it found those notices did "not constitute[] withdrawal[s] of the appeal, such that there [was] no basis for the Board to not proceed with its appellate review of [his] claim."  S.A. 33.  The Board proceeded to the merits and ultimately upheld the RO determination because "the preponderance of the evidence establish[ed] that [Mr. Groves's] claim for VRE services was placed in a discontinued status due to his failure to maintain satisfactory conduct or cooperation."  S.A. 44.

Mr. Groves appealed to the Veterans Court, and in a single-judge decision issued on August 29, 2019, the Veterans Court affirmed the Board.  Thereafter, the Veterans Court granted Mr. Groves's request for panel review "for the purposes of determining the effect, if any of a claimant's written request to VA that it refrain from adjudicating his or her claim."  S.A. 1–2.  The court withdrew the prior single-judge memorandum decision and sought briefing from amici curiae.  Both amici argued that the Veterans Court's decision in *Hamilton*, 4 Vet. App. 528 gives a veteran the

---

the Secretary stayed consideration of veteran's request for equitable relief pending appeal of the discontinuation of his VRE benefits).

right to automatically pause adjudication of his or her claims.

On March 25, 2021, the Veterans Court issued a panel decision affirming the Board. The court found that the Board lacked authority to adjudicate Mr. Groves's appeal of the RO decision under *Hamilton*, which it read as requiring an automatic stay when requested by a veteran. However, the court found any such error was harmless based on the record. *Decision*, 33 Vet. App. at 379–80. In a concurring opinion, Chief Judge Bartley agreed with the panel's result but not its reasoning. *Id.* at 383–84. She disagreed with the majority's interpretation of *Hamilton*, observing that "*Hamilton* did not create a procedural tool that allows claimants to indefinitely pause the VA adjudication process at will." *Id.*

Mr. Groves now appeals to this court. Our jurisdiction to review Veterans Court decisions is generally limited to questions of law, which we review de novo. 38 U.S.C. § 7292(d)(1); *Willsey v. Peake*, 535 F.3d 1368, 1372 (Fed. Cir. 2008). We appointed amicus curiae in support of Mr. Groves's position, invited supplemental briefing, and held oral argument on April 19, 2022.

## DISCUSSION

Mr. Groves argues that the Veterans Court erred in affirming the Board's decision because the Board was required to grant him an indefinite stay of proceedings under *Hamilton*. The Veterans Court agreed with Mr. Groves that, under *Hamilton*, a stay is automatically required when requested by a veteran and that the Board therefore erred by not granting Mr. Groves a stay. The court nevertheless affirmed the Board's decision, finding the Board's error was harmless because "neither [Mr. Groves] [n]or Amici explain[ed] how he was harmed by the Board's adjudication of his VRE claim." *Decision*, 33 Vet. App. at 380.

We hold that the Veterans Court erred as a matter of law in finding that the Board was automatically required to grant Mr. Groves a stay, and it instead should have determined whether Mr. Groves had established good cause for a stay and, if so, the appropriate duration and conditions of the stay. We remand to the Veterans Court to reconsider the question of the stay under the proper standard and to readdress the harmless error question.

I

The only authority the Veterans Court cites for the proposition that the agency must suspend the appeal process upon request is *Hamilton*. *See Decision*, 33 Vet. App. at 378–79. Setting aside the fact that *Hamilton* is not binding on this court, we do not read *Hamilton* as compelling the agency to automatically grant a stay of proceedings. That case involved a scenario in which the appellant chose not to proceed with an appeal of three claims (osteoporosis, osteomyelitis, and premature aging) in addition to his then-pending appeal of two claims (for lung cancer and Hodgkin's disease). The veteran did not request that the agency suspend actions on the appealed claims, as occurred here. *See Hamilton*, 4 Vet. App. at 543. Rather, he informed the agency that he wished to proceed at that time only on the two appealed claims. Nevertheless, the RO later issued a decision denying all five claims. On appeal, the Veterans Court acknowledged that "the Board and the RO [must] adjudicate all claims reasonably raised by the claimant up until its decision," but held—as "a corollary of that rule"—where "the claimant expressly indicates an intent that adjudication of certain specific claims not proceed at a certain point in time, neither the RO nor [the Board] has authority to adjudicate those specific claims, absent a subsequent request or authorization from the claimant." *Id.* at 544.

On its face, *Hamilton* does not involve the propriety of stays on appealed claims, but rather holds that the Board

cannot treat an appeal as covering claims not appealed by the veteran. *Id.* To the extent that language in *Hamilton* can be read to require an automatic stay of proceedings upon request, we conclude that any such rule is neither required nor appropriate. Allowing appellants to automatically stay proceedings would be inconsistent with the statutory scheme, which is replete with measures designed to facilitate the timely adjudication of veterans' appeals. Section 7107 obligates the Board to review cases on appeal "in regular order according to its place on the docket," 38 U.S.C. § 7107(a)(4), and other provisions place time limitations on claimants. For example, a claimant has one year to furnish information and evidence upon receipt of notice of a deficient claim, *see* 38 U.S.C. § 5103(b)(1); 38 C.F.R. § 21.32(c), and claimants have no more than one year following notice of an RO decision to initiate an appeal of that decision to the Board, *see* 38 U.S.C. § 7105(b)(1)(A). While the VA regulations provide that the proceedings may be left open to acquire additional evidence, *see, e.g.*, 38 C.F.R. § 20.605, a requirement to indefinitely stay proceedings is antithetical to the interests of prompt adjudication.

An automatic stay also would be inconsistent with ordinary principles of judicial administration. To be sure, as in any proceeding before a tribunal or a court, a veteran may request a temporary stay with a showing of good cause. As the Supreme Court stated in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." It is within the sound discretion of the tribunal to grant or deny a request to stay proceedings. *See, e.g.*, *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("When and how to stay proceedings is within the sound discretion of the trial court." (citing *Landis*, 299 U.S. at 254–55)); *see also Rhines v. Weber*, 544 U.S. 269, 276 (2005) ("District courts do ordinarily have

authority to issue stays, where such a stay would be a proper exercise of discretion." (internal citations omitted)).

But a "court's discretion [to stay proceedings] is not . . . without bounds," *Cherokee Nation*, 124 F.3d at 1416 (citing *Hendler v. United States*, 952 F.2d 1364, 1380 (Fed. Cir. 1991)), and "[a] stay so extensive that it is 'immoderate or indefinite' may be an abuse of discretion," *id.* (citing *Landis*, 299 U.S. at 257); *see also Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (acknowledging that a "protracted or indefinite" stay may be "an abuse of discretion"). "In deciding to stay proceedings indefinitely," we have held, there must be a "pressing need" for the stay, and the tribunal must "balance [the] interests favoring a stay" against opposing interests. *Cherokee Nation*, 124 F.3d at 1416. "Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Id.*

We see no reason to treat the Board differently than any other tribunal in that it has "broad authority" to manage the activities of its docket. *Ramsey v. Nicholson*, 20 Vet. App. 16, 28 (2006).[3] While proceedings before the Board are denominated appeals from an RO, they are in fact much more like trial court proceedings, *see, e.g.*, *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) ("The evaluation and weighing of evidence are factual determinations committed to the discretion of the [Board as] factfinder."); *see also Gilbert v. Derwinski*, 1 Vet. App. 49, 52 (1990) (explaining that the Board is an "administrative tribunal [that] functions as a factfinder in a manner similar to that of a trial court"), and therefore we think our cases involving stays of trial court proceedings generally

---

[3] As recognized in *Ramsey*, the Board may stay cases on its own accord "for well-articulated reasons of sound case management." 20 Vet. App. at 28.

apply to proceedings before the Board.  In addressing the question of a stay, it is important to take into account that veterans are often pro se litigants before the Board who may lack a complete understanding of legal standards and therefore "[a] liberal and sympathetic reading of [arguments] is necessary." *Comer v. Peake*, 552 F.3d 1362, 1368 (Fed. Cir. 2009) (discussing 38 C.F.R. § 20.02, which requires the Board to "construe an appellant's arguments 'in a liberal manner for purposes of determining whether they raise an issue on appeal'"); *see also Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (holding that pleadings drafted by pro se litigants should be held to a lesser standard than those drafted by lawyers since "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims").

We think a good cause standard is consistent with the prevailing standard in district court litigation and with VA regulations that allow veterans to stay deadlines in other contexts.  For example, as a general matter, "[t]ime limits within which claimants or beneficiaries are required to act to perfect a claim or challenge an adverse VA decision may be extended *for good cause shown*."  38 C.F.R. § 3.109(b) (emphasis added).  The rules of the Veterans Court also require that "a party seeking a [Veterans] Court order to suspend action by the Secretary or the Board . . . shall submit for filing . . . a motion . . . stat[ing] the reason for the relief requested and the facts relied on."  U.S. Vet. App. R. 8.

Under a good cause standard, relevant considerations by the Board for determining whether to grant a stay include the reasons given for the stay, the identity of the party seeking the stay, whether the stay is opposed by other parties to the proceeding, and the requested duration of the stay.  As noted earlier, the Board should consider the uniquely pro-veteran, non-adversarial nature of the veterans' claims process in evaluating a veteran's request.  Any stay that is granted should be appropriately tailored to

prevent undue delay.  If a long stay is justified, requiring recurring status reports throughout the duration of a stay is an appropriate mechanism for helping to prevent undue delay.

## II

The Veterans Court found any error with respect to Mr. Groves's request for a stay was harmless because he had not shown "how he was harmed by" the Board's decision. *Decision*, 33 Vet. App. at 380; *id.* at 383–84 (Bartley, C.J., concurring) (agreeing with result).  The government's position is that remand is necessary for the Veterans Court to consider whether its harmless error determination remains appropriate in light of the standard we adopt today. *See* Oral Arg. at 29:57–32:05.  We accordingly do not reach the harmless error question, nor do we foreclose the Veterans Court from making a harmless error determination on remand.

## CONCLUSION

Because the Veterans Court erred in holding that the Board was required to automatically grant Mr. Groves's request for an indefinite stay under its decision in *Hamilton*, we vacate the decision of the Veterans Court and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

No costs.