# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-0024

EDWARD T. WESTERVELT, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 14, 2024)            Decided April 8, 2025)

*Kenneth M. Carpenter* of Topeka, Kansas, with whom *Richard L. Frankel* and *Jennifer L. Stonage*, both of Cherry Hill, New Jersey, were on the brief, for the appellant.

*Ronen Z. Morris*, with whom *Madeleine Cardona*, Appellate Attorney; *Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, MEREDITH, and TOTH, *Judges*.

TOTH, *Judge*: This case carries a complicated history and touches on the procedures VA must follow when a decision review officer (DRO) revises a decision to be less favorable to a claimant. Army veteran Edward T. Westervelt was already in possession of a 70% rating for traumatic brain injury (TBI) when the regional office (RO) awarded him a separate 30% rating for PTSD. On review, a DRO found that it was clear and unmistakable error (CUE) to award a separate rating for PTSD as the evidence of record showed that it was not possible to differentiate the PTSD and TBI symptoms. To avoid pyramiding—i.e., double compensation for identical symptomatology—the DRO revised the decision and combined the PTSD and TBI ratings, resulting in a single 70% rating for both conditions.

Mr. Westervelt challenges this ruling and seeks reinstatement of his separate PTSD rating. Across a series of appeals, both the Board and this Court have considered various allegations of error. Here, we focus on whether the Board was required to address the DRO's CUE finding in addition to assessing the appropriate rating for PTSD. We conclude that the Board was required to address the DRO's CUE finding separate and apart from assessing whether the veteran is entitled to a higher PTSD with TBI rating. But the Board has yet to address these intertwined issues in a

single decision, and without a clear picture of the relationship between the Board's CUE determination and its ultimate merits decision, the Court cannot effectively review the issues on appeal. *See King v. Shulkin*, 29 Vet.App. 174, 182 (2017) (judicial review is frustrated whenever "the Court is uncertain about the bases for the Board's decision").

The Court remands for the Board to adequately address all issues presented on the record, to include both the preliminary CUE finding and whether Mr. Westervelt is entitled to a higher evaluation for his PTSD, via a separate rating or otherwise.[1]

## I. BACKGROUND

### A.

A veteran dissatisfied with an Agency decision can initiate appellate review by filing a Notice of Disagreement (NOD). 38 U.S.C. § 7105. Mr. Westervelt's claim was filed under the legacy system, the appeals system in place before the enactment of the Veterans Appeals Improvement and Modernization Act of 2017. Under the legacy system, if the claimant files a timely NOD, VA reassesses the claim and, if this initial reassessment fails to "resolve the disagreement by either granting the benefit sought or through withdrawal of the [NOD], [the] agency shall prepare a statement of the case [(SOC)]." 38 U.S.C. § 7105(d) (2012 & Supp. IV 2017).

A regulation, 38 C.F.R. § 3.2600, provides a specific process for Agency review of benefit claims decisions in the legacy system. Subsection (a) explains that a claimant who filed an NOD has a right to DRO review of that decision.[2] It directs the DRO to consider all evidence of record and review the Agency decision de novo. Subsection (d) authorizes the DRO to grant the benefit sought but prohibits any revision that is unfavorable to a claimant. Subsection (e) provides an exception to this, however, and allows a reviewer to reverse or revise the decision under review on grounds of CUE, even if the result is disadvantageous to the claimant. 38 C.F.R. § 3.2600(e)

---

[1] In the decision on appeal, the Board also granted a 50% rating for migraine headaches for the period on appeal. Record (R.) at 5. This is a favorable finding that the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009); *see also Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order) ("This Court's jurisdiction is confined to the review of final Board . . . decisions which are adverse to a claimant."). To the extent that the Board denied entitlement to a rating in excess of 50% for headaches, the appellant does not challenge that finding, and the Court therefore deems any appeal of that matter abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

[2] The regulation also permits review by a veterans service center manager or pension management center manager. 38 C.F.R. § 3.2600(a) (2024).

2

(citing 38 C.F.R. § 3.105(a)). Further, per subsection (f), unless a claimant withdraws the NOD or the DRO grants the benefit in full, VA will proceed with the traditional appellate process by issuing an SOC.

The CUE standard is spelled out in § 3.105(a). It provides that CUE "is a very specific and rare kind of error . . . of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." 38 C.F.R. § 3.105(a)(1)(i) (2024). The regulation continues: "If it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable." *Id.* This Court has articulated that a valid showing of CUE must satisfy three elements: (1) the adjudicator either ignored the correct facts of record or incorrectly applied statutes or regulations in effect at the time; (2) the alleged error was undebatable, not merely a disagreement as to how the facts were weighed or the law was applied; and (3) the commission of the alleged error, at the time it was made, manifestly changed the outcome of the decision at issue. *Young v. Wilkie*, 31 Vet.App. 51, 56 (2019).

A final layer of relevant law implicates how VA rates impairments that present similar or overlapping symptomatology. As a starting point, VA's rating schedule requires that separate conditions or manifestations of the same condition be rated separately, unless otherwise provided in the ratings schedule. *See* 38 C.F.R. § 4.25(b) (2024). However, VA's "anti-pyramiding" provision instructs adjudicators to avoid "evaluation of the same disability under various diagnoses." 38 C.F.R. § 4.14 (2024). Read in concert with each other, these regulations establish that separate ratings are required for separate conditions *unless* their symptomatology is duplicative or overlapping. *See Esteban v. Brown*, 6 Vet.App. 259, 262 (1994).

B.

This case bears a long and complex history, a full account of which helps to frame the issues on appeal. Mr. Westervelt served in the Army from 2000 to 2004, which included a tour of duty in Iraq. During his deployment, he and some fellow soldiers were performing tests on the weapons system of a Bradley Fighting Vehicle. R. at 291. He was standing atop the vehicle, his head close to the gun's barrel, when the gun accidentally fired. *Id*. He fell from the vehicle and lost consciousness. R. at 291-92. Ultimately, he suffered a TBI and developed PTSD from this event.

In 2007, Mr. Westervelt sought service connection for these conditions. The RO denied his PTSD claim but granted the TBI claim and assigned a 10% rating effective November 30, 2007.

R. at 2241-43. A couple years later, the RO increased his TBI rating to 70%, effective April 21, 2009. R. at 2116-20. This action increased his combined rating to 90%, based on his TBI rating as well as his ratings for tinnitus and bilateral lower extremity and lumbar conditions not at issue here.[3]

In March 2016, the veteran again sought service connection for PTSD. As support, he submitted an August 2016 private opinion from Dr. Haynes. R. at 1359-60. Dr. Haynes opined that it was not possible to differentiate the symptoms attributable to Mr. Westervelt's TBI from those attributable to his PTSD; yet he opined that it *was* possible to differentiate the portion of the veteran's occupational and social impairment caused by the TBI. *Id.*

In May 2017, VA obtained new exams for the veteran's PTSD and TBI. The PTSD examiner, Dr. Bolger, opined that it was not possible, or at least would be speculative, to differentiate which of the veteran's symptoms are attributable to TBI and which are attributable to PTSD because he "did not assess the Veteran for symptoms of a [TBI]." R. at 1076. Dr. Bolger also opined that it was not possible to differentiate what portion of the veteran's occupational and social impairment was caused by his TBI because "the component symptoms of [his PTSD and TBI] were reported to be intermingled." R. at 1077. The TBI examiner, Dr. Heath, likewise opined that she could not "delineate the contribution of [the veteran's PTSD] from TBI without mere speculation since the 2 disorders are concomitant." R. at 420.

In July 2017, the RO granted service connection for PTSD and assigned a 30% rating, effective March 30, 2016. R. at 1025-27. In its decision, it listed both the 2016 private opinion and the 2017 VA exams as evidence considered. R. at 1025-26. (Importantly, awarding this separate rating did not impact Mr. Westervelt's combined 90% rating or his monthly compensation.) The veteran filed an NOD as to the evaluation level assigned for his PTSD and selected the DRO review process. R. at 1002-03.

In May 2018, the DRO found that the award of a separate rating for PTSD in the 2017 RO decision was CUE because "[t]he VA examiner stated that i[t] was not possible to differentiate

---

[3] A quick note about how VA combines evaluations for multiple conditions: The combined ratings table provides that, after individual conditions are "separately" rated, the disabilities are then all combined "as described in paragraph (a)." 38 C.F.R. § 4.25(b). VA first considers the condition with the highest rating and then conditions with lower ratings "in order of severity" according to the formula set out in the table. 38 C.F.R. § 4.25(a). Doing so avoids impermissibly awarding an aggregate disability rating greater than 100%. *See Moody v. Wilkie*, 30 Vet.App. 329, 336 (2018). This "combined rating" governs a veteran's monthly compensation rate. *See* 38 U.S.C. § 1114 (Rates of wartime disability compensation); 38 U.S.C. § 1134 (Rates of peacetime disability compensation).

TBI symptoms from PTSD symptoms." R. at 859. In other words, awarding separate ratings for TBI and PTSD violated the rule against pyramiding because the veteran's symptoms were duplicative or overlapping. *See Esteban*, 6 Vet.App. at 262. The decision maintained that service connection for PTSD was warranted with a February 2016 effective date but explained that PTSD would be evaluated with TBI and that the already assigned 70% rating would be continued. Notably, the DRO informed the veteran that these actions would not affect his overall combined evaluation or his monthly compensation payments. R. at 863.

VA then issued an SOC, listing the issue as "[e]valuation of [PTSD] with [TBI] (previously evaluated under DC 8045-9304) currently evaluated as 70 percent disabling." R. at 819. In its reasons or bases section, the SOC explained that the 2017 rating decision committed CUE in assigning a separate 30% rating for PTSD because the VA examiner could not differentiate TBI symptoms from PTSD symptoms. R. at 843. Mr. Westervelt submitted his VA Form 9 and noted that he wanted to "appeal all of the issues listed on the [SOC] and any supplemental [SOC]." R. at 798. He wrote that VA failed to consider that the 2016 private examiner opined that his PTSD and TBI symptoms were distinguishable. *Id.* He also submitted another NOD form, listing the 2018 DRO decision as the decision with which he disagreed and again stating that VA failed to consider the 2016 private opinion. R. at 769-70.

In 2019, the Board issued the first of two decisions it would render on this claim: It found that a separate rating for PTSD was not warranted because the evidence did not support that the veteran's PTSD symptoms were distinguishable from his TBI symptoms. R. at 207-18. Turning to his 70% rating for PTSD with TBI, the Board denied a higher rating, relying in part on a 2018 VA exam and a 2019 private exam. R. at 218-23. It made no mention of the DRO's CUE determination.

Mr. Westervelt appealed to this Court, which held in a single-judge decision that the Board erred by applying the wrong standard in reviewing the DRO's 2018 decision. *Westervelt v. McDonough*, No. 20-2077, 2022 U.S. App. Vet. Claims LEXIS 152 (Feb. 2, 2022). Specifically, the Court said that the Board should have reviewed the CUE findings made in the DRO decision, which means that the Board should have looked only to the evidence of record at the time of the 2017 RO decision. *Id.* at *6-8. So, the Court said, the Board erred when it considered evidence beyond that which was in the file at the time of the 2017 RO decision and by not assessing whether there was CUE in that RO decision. *Id.*

On remand, the Board performed this analysis and issued the decision now on appeal. It agreed with the DRO—the RO committed CUE in the 2017 rating decision when it assigned separate ratings for PTSD and TBI because the assignment of separate ratings violated the rule against pyramiding. R. at 19.

C.

This brings us to Mr. Westervelt's current appeal. During initial briefing, the parties argued over the validity of the Board's CUE finding. The appellant contended that the Board erred by conducting a de novo review of the record evidence (i.e., assessing anew its probative value) rather than performing the more restrictive three-part CUE analysis. The Secretary countered that the Board did not reweigh the evidence before the 2017 RO but merely provided an explanation for its findings consistent with its duty to provide an adequate statement of reasons or bases. In a single judge decision, the Court favored the Secretary's position. The Court emphasized that it reviews the Board's CUE determinations under an "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard and, under that standard, found no error. *Westervelt v. McDonough*, U.S. Vet. App. No. 23-0024 (Apr. 16, 2024) (mem. dec.) (quoting 38 U.S.C. § 7261(a)(3)(A)).

Mr. Westervelt moved for reconsideration or, alternatively, for a panel decision. His motion suggested that the "arbitrary and capricious" standard of review was not appropriate for unfavorable VA-initiated CUE determinations. The Court then referred this case to a panel. The panel sought supplemental briefing from the parties as to the proper standard of review for VA-initiated CUE determinations. New counsel entered appearances for the veteran and for the Secretary, and their responses to the Court's order changed the course of this appeal. Both parties now argue, albeit for different reasons, that answering the standard of review question is not necessary as the Board should not have addressed CUE in the first place.

Mr. Westervelt's supplemental brief alleges that the Board lacked jurisdiction to review the DRO's CUE determination because it was a separate decision from the 2017 RO decision that was subject to its own NOD, SOC, and VA Form 9. Under this reasoning, the PTSD rating was the only issue on appeal because the original NOD was filed in response to the denial of a rating higher than 30% for PTSD. However, just before oral argument, he submitted a motion contradicting that position, arguing that the 2018 DRO decision was a new decision that replaced the 2017 RO decision, ending the appeal of the 2017 RO decision "as a matter of law." Appellant's Nov. 7, 2024,

Motion at 2. He argues that the NOD he submitted in May 2018 initiated an appeal of the 2018 DRO decision and, in response to that NOD, VA should have issued an SOC. And because no SOC was issued, any appeal of the DRO's decision remains pending.

The Secretary contends that the CUE determination was not on appeal to the Board because the DRO decision revised the 2017 RO decision and so the SOC only needed to cover the issue of the proper rating for PTSD with TBI. Per the Secretary, the effect of the DRO's revision is that the 2017 RO decision granted service connection for PTSD with TBI with a 70% evaluation as of the date it was issued; and, because the veteran did not raise any argument in his Form 9 related to the CUE determination or the DRO's revision of the 2017 RO decision, the Board need not have addressed CUE. Further, the Secretary asserts that, unlike other VA adjudicators who are constrained by § 3.2600(a), the Board can reject an RO's favorable findings without finding CUE.

## II. ANALYSIS

### A. CUE Was Before the Board

In the early days of the Court, we disclaimed Mr. Westervelt's argument that multiple NODs could be operative when pertaining to a single claim. *Hamilton v. Brown*, 4 Vet.App. 528, 537 (1993) (en banc), explains that an NOD "carries out the function of initiating an appeal to the [Board]." So, after an NOD for a claim is filed, no subsequent NOD is operative for that claim unless

> (a) the NOD has been withdrawn; or (b) the appeal has been closed by the RO due to the claimant's failure to file a timely [VA Form 9] after issuance of the SOC (that is, the RO decision becomes final); or (c) the full benefits sought on appeal have been granted by the RO; or (d) a final appellate decision has been issued by the Board.

*Id.* The Court continued, observing that 38 U.S.C. § 7105(d)(1) directs an RO, after receiving an NOD, to undertake "'such development or review action as it deems proper'" prior to issuing an SOC. *Id.* (quoting 38 U.S.C. § 7105(d)(1) (1988 & Supp. IV 1993)). Considering that an NOD is only operative when it prevents a claim from becoming final, "it is obvious that RO re-review under section 7105(d)(1) could not give rise to another NOD because an NOD would already have been filed initiating a review of that claim, and the appeal would proceed to the [Board] pursuant to that NOD." *Id.*

7

Section 7105(d)'s implementing regulation, 38 C.F.R. § 3.2600, provides for precisely the kind of RO re-review discussed in *Hamilton*. The claimant can elect for another round of Agency review in the NOD, this time by a more senior adjudicator who affords no deference to the rating decision on review. Critically, subsection (f) reiterates *Hamilton*'s sentiment: unless a claimant withdraws the NOD as a result of the DRO's review, VA proceeds with the traditional appellate process by issuing an SOC, and DRO review does not limit or otherwise alter a claimant's appeal rights. Meaning, a claimant need not file an NOD with the DRO's decision to continue the appeal or prevent finality. And that's what happened here: the DRO decision did not grant the benefit sought, so VA pushed the appeal forward and issued an SOC. So, under *Hamilton*, Mr. Westervelt's 2018 NOD form was inoperable and did not initiate a new appeal.

But he also contends that, because his 2017 NOD responded to the denial of a separate rating in excess of 30% for PTSD, only an SOC listing that specific issue could be valid, and because the May 2018 SOC instead addressed the issue of a rating higher than 70% for PTSD combined with a TBI, the SOC was invalid and deprived the Board of jurisdiction. *See* 38 U.S.C. § 7105(d)(1)(A) (2012 & Supp. IV 2017) (stating that an SOC shall include "[a] summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed"). But this argument falters because, when the DRO revises a prior RO decision for CUE, it's effective as of the date of the original erroneous decision. 38 U.S.C. § 5109A(b); *see* 38 C.F.R. § 3.105(a) (2017);[4] *see also Young v. Shinseki*, 25 Vet.App. 201, 203 (2012) (en banc order) (per curiam) ("It is well settled that the Court has jurisdiction to determine whether the Board had jurisdiction to take the action it takes in a decision."); *Evans (James) v. Shinseki*, 25 Vet.App. 7, 10 (2011) ("[T]he Court exercises de novo review over Board determinations that are critical to its jurisdiction."). This is why the 2017 RO decision, once revised, presented the issue of whether a rating in excess of 70% for PTSD with TBI was warranted. What's more, an NOD with a rating decision assigning an evaluation level necessarily "initiate[s] appellate review of the claim concerning the element of compensation level." *Dunlap v. Nicholson*, 21 Vet.App. 112, 117 (2007) (citing *Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997)). Here, the NOD expressed disagreement with the evaluation level of his PTSD—that issue remained the same, it was merely characterized differently by virtue of the DRO's decision.

---

[4] This provision now appears in § 3.105(a)(1)(ii) (2024).

The Secretary takes a different tack, arguing that the CUE issue was not before the Board because it was not addressed in the SOC nor were any CUE-related arguments raised in the Form 9. But this misreads the record: It's true that, under the "Issue" heading, the SOC listed only "evaluation of [PTSD] with [TBI] (previously evaluated under DC 8045-9304) currently evaluated as 70 percent disabling." R. at 819. But in its "Reasons and Bases" section, the SOC plainly repeats the determination of the DRO—"Rating Decision dated July 25, 2017[,] was clearly and unmistakably erroneous in assigning a separate 30[%] evaluation for [PTSD]. The VA examiner stated that [it] was not possible to differentiate TBI symptoms from PTSD symptoms." R. at 843. Moreover, Mr. Westervelt's VA Form 9 indicated that he wanted to appeal all issues listed on the SOC. And he made a specific allegation of error that implicates the DRO's CUE finding: "VA failed to consider evidence from Dr. Abrams" that the veteran's PTSD and TBI symptoms were distinguishable. R. at 798. There is no factual basis for the Secretary's argument that the DRO's CUE determination was not before the Board.

Ultimately, both arguments stumble against the Board's duty to address all material issues of fact or law in the record before it, including any issue or theory explicitly raised by the claimant or reasonably raised by the record. 38 U.S.C. § 7104(d)(1); *Robinson*, 21 Vet.App. at 552-56. Mr. Westervelt received an SOC that discussed the DRO's CUE finding as a prerequisite to its denial of a higher rating for PTSD with TBI; he submitted a VA Form 9 that sought to appeal all issues in the SOC; and he specifically alleged error regarding evidence he believed demonstrated entitlement to separate ratings. Based on this record, the issue of the DRO's CUE determination was before the Board under its jurisdictional statute and our interpretation of that statute in *Robinson*. As explained below, however, the Board also needs to conduct a related de novo assessment of the appropriate ratings for the entire period on appeal, which could impact or obviate the need for the Court to review the Board's CUE findings, so the Court will not now review that portion of the Board's analysis.

### B. PTSD Rating Was Before the Board

Next, we note that the decision before us is not complete—specifically, the Board was also required to address the propriety of the veteran's PTSD rating (the issue on direct appeal via the 2017 NOD) in addition to addressing CUE.

The Secretary contends that the Board needn't have addressed the proper rating for the veteran's PTSD in the decision on appeal because the Court's 2022 memorandum decision affirmed

9

that portion of the 2019 Board decision that denied a rating higher than 70% before remanding the CUE matter. *See* Oral Argument at 39:00-43:00, *Westervelt v. McDonough*, U.S. Vet. App. No. 23-0024 (oral argument held Nov. 14, 2024), available at https://www.youtube.com/watch?v=cDtBK1I_fj0; *see also* Secretary's Supplemental Brief at 12 n.10. However, several aspects of the memorandum decision counsel against this reading: the decretal paragraph of that decision contains no limiting language; the Court did not deem the higher rating issue abandoned; and the decision vacated the Board's decision in full and remanded the whole of the PTSD claim for readjudication. R. at 129. We decline to read into the single judge decision a summary affirmance of discrete Board analyses pertaining to a complex rating evaluation. *See* 38 U.S.C. § 7252. In short, the Board's obligation to address the PTSD rating matter was not extinguished when we remanded for it to address the preliminary issue of CUE.

Regrettably, we must remand this case again for the Board to assess *all issues* before it, including whether there was CUE in the 2017 RO decision and, subsequently, the higher rating issue on direct appeal. These two issues are highly related. For example, how the Board comes out on the CUE determination affects where it begins its assessment of the higher rating question—if there was CUE in the 2017 RO decision, then the Board will consider whether a rating higher than 70% for PTSD with TBI is warranted. If there was no CUE in the 2017 RO decision, then the Board will consider whether a separate rating higher than 30% for PTSD is warranted. What's more, regardless of how it comes out on the CUE issue, the Board has the authority to grant a separate rating for PTSD in the first instance via its de novo review of the entire record, thus obviating any need for our review of the Board's CUE findings. *See* 38 U.S.C. § 7104(a); *Anderson v. Shinseki*, 22 Vet.App. 423, 427-28 (2009). At bottom, it is in the interest of judicial efficiency for the Court to remand this claim for a complete Board decision. *See Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (holding that claims that are inextricably intertwined should be adjudicated together).

Though this procedural ordeal adds time to an already lengthy appeal, it presents an opportunity to the appellant. Because the Board must complete its review of the claim on direct appeal, he can submit additional evidence and argument on remand in support of a separate rating for PTSD. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999); *see also Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

C. Appellant's Remaining Arguments

Mr. Westervelt makes two additional arguments that were resolved by our decision in *Young*. He contends that the DRO wasn't permitted to revise the 2017 RO decision because CUE revision is only initiable against final decisions. We rejected this argument in *Young*, holding that § 3.2600(e) expressly provides for CUE-based revision of non-final decisions. 31 Vet.App. at 53. Next, he argues that he was not afforded the procedural rights set out in § 3.105(e) for reduction cases. Again, we held in *Young* that those procedural protections do not apply in cases where the DRO revises a prior decision to be less favorable. We explained that DRO CUE findings are *revisions* "based on the evidence of record at the time the original decision was made," not *reductions* "based on later evidence showing a change in the veteran's condition." *Id.* at 56. Further, "the plain meaning of § 3.105(e) is that notice is warranted only when there is a reduction in 'compensation payments currently being made.'" *Tatum v. Shinseki*, 24 Vet.App. 139, 143 (2010) (quoting 38 C.F.R. § 3.105(e)). Even if § 3.105(e) applied to DRO revisions, it is not applicable in this case because it is undisputed there was no reduction in compensation payments being made to Mr. Westervelt. Accordingly, these arguments fail.

Additional assertions are scattered about the veteran's supplemental brief, including that he did not receive notice of the DRO's decision compliant with 38 U.S.C. § 5104. He offers no argument in support of these contentions, so the Court does not address them. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments); *see also Evans (Walter) v. West*, 12 Vet.App. 22, 31 (1998) (noting that the Court does not consider "vague assertion[s]" or "unsupported contention[s]").

Finally, we reiterate that, because we are vacating and remanding the Board's decision, we need not resolve the question of what standard of review we should apply in cases of VA-initiated unfavorable CUE proceedings. We leave that question for another day.

### III. CONCLUSION

The April 16, 2024, memorandum decision is WITHDRAWN, and this opinion is issued in its stead. The appeal of that part of the October 18, 2022, Board decision that denied entitlement to a rating in excess of 50% for migraine headaches is DISMISSED. Based on the foregoing, that part of the Board's decision finding CUE in the July 2017 rating decision that assigned a separate 30% rating for PTSD is VACATED, and the matter is REMANDED for further adjudication

11

consistent with this opinion. The appellant's November 7, 2024, motion to reverse the Board's decision based on lack of subject matter jurisdiction is denied. The appellant's May 7, 2024, motion for reconsideration and in the alternative by panel is denied as moot.